## BEEBE v. UNITED STATES.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
MIDDLE DISTRICT OF ALABAMA.

No. 71. Argued November 18, 1895. — Decided March 2, 1896.

In Alabama a judgment in itself imposes no lien upon the property of the judgment debtor, but the issue of an execution and its delivery to the officer are necessary to create a lien.

According to the settled rule in Alabama, when an execution comes to the hands of the sheriff the lien attaches and continues from term to term, provided alias and pluries writs are duly issued and delivered, and while it is so kept alive the lien is, upon levy and sale, paramount to any intermediate conveyance by the debtor; and as, in this case, the facts show that valid executions were issued and delivered to the marshal as early as January 23, 1877, and on return alias executions were duly issued and duly levied, the subsequent sale related back to the original issue, and took the legal title out of the plaintiff in error prior to his deed of March 22, 1877.

When it appears by a memorandum on judgment records that "by consent execution is stayed until" a date named, and execution issues before that date, it will be presumed, nothing appearing to the contrary, that it was rightly issued, and that either the agreement lacked consideration, or was not authorized, or had been by mutual assent annulled, or that the terms of the agreement had not been complied with by defendant.

THIS was an action "in the nature of ejectment," as so denominated in the Alabama code, brought by the United States against Eugene Beebe, Sims Phillips, and Adeline Thomas for the recovery of an undivided one fourth interest in a tract of land known as the Montgomery race track, containing eighty acres, in the Circuit Court of the United States for the Middle District of Alabama. Beebe defended as landlord, and Phillips and Thomas were his tenants. Trial was had; a verdict rendered for plaintiffs; and judgment entered thereon accordingly. On the trial plaintiffs put in evidence a deed executed by Josiah Morris and wife, June 14, 1873, to Eugene Beebe and Ferrie Henshaw of an undivided one half of the eighty acres in question, of which it was admitted Morris was seized and possessed at that date. The records

of two separate judgments recovered in favor of the United States against Beebe and others, December 19, 1876, at the regular November term, 1876, of the Circuit Court of the United States for the Middle District of Alabama, for the sums respectively of $991 and $1638.68, were put in evidence. The consideratum clause in each instance concluded, "for which let execution issue." Above the record of each judgment appeared the amount thereof in figures, followed by the words: "Stay of ex. till 25th March, 1877. R.;" and at the foot of each judgment were these words: "And by consent execution is stayed until the 25th day of March, A.D. 1877."

Two alias executions issued on said judgments, May 10, 1877, "with the indorsements thereon," were put in evidence. They ran in one of the forms of an alias writ, "again you are hereby commanded," and were entitled on the back, "alias fi. fa." Each had endorsed upon it (in almost verbally identical words) the following:

"Received in office January 23d, 1877.
                    "GEO. TURNER, *U. S. Marshal.*
"To satisfy the within execution, I have levied, this 5th day of April, 1877, on an undivided half interest in the following described property, to wit:

&ast;  &ast;  &ast;  &ast;  &ast;

"2d. The tract of land known as Montgomery race track, near Montgomery, containing 80 acres, more or less.

&ast;  &ast;  &ast;  &ast;  &ast;

"Notice in writing given the defendant.
                    "GEO. TURNER, *U. S. Marshal.*

&ast;  &ast;  &ast;  &ast;  &ast;

"Returned for alias, not advertised and sold for want of time. April 6th, 1877.
                    "GEO. TURNER, *U. S. Marshal,*
                          "P'r F. JOST, *Dep.*"

Below these indorsements, on each writ, the clerk of the court certified, under his hand and seal, May 10, A.D. 1877,

"the foregoing page to contain a true copy of the return of the marshal on the execution issued next last preceding this in the aforesaid cause as the same appears of record and on file in my office as clerk of said court."

There was also endorsed on each writ, "Received in office May 10, 1877;" and a levy, May 10, 1877, which included said tract of land.

On the execution for $1638.68 appeared this return: "The property of the defendant, Beebe, herein described, [certain property being named as excepted,] was, on the second day of July, 1877, sold to the United States for one thousand dollars, and deed made to the United States for the same. George Turner, U. S. Marshal."

Plaintiffs then introduced in evidence a deed of the United States marshal to the United States, dated July 2, 1877, and duly acknowledged and recorded, reciting the levy of execution on the property and the sale thereof on that date, after due advertisement, to the United States, as the highest and best bidder, and conveying all Beebe's interest in the tract.

Defendants offered in evidence a deed from Beebe to Henshaw, dated March 22, and acknowledged and recorded March 23, 1877. This instrument recited that a copartnership had existed between Beebe and Henshaw under the name of E. Beebe & Co.; that Beebe would be found on a settlement of the affairs of the firm to be indebted to it, and also to Henshaw for moneys advanced and paid out by him in excess of his proportion as partner, the precise amount of which could not be ascertained until the debts of the firm were paid and a settlement had between Beebe and Henshaw; that Beebe and Henshaw were owners as partners of real and personal property, which was enumerated, and included an undivided half interest in a tract of land called "the old Montgomery race track;" and, therefore, "to protect and secure" the creditors of the firm and to enable Henshaw "the more easily and readily" to settle and pay its debts and "to protect and secure" Henshaw for moneys paid out and advanced for the firm in excess of his proportion, and "to protect and secure him" for all moneys that Beebe might owe the firm or Hen-

shaw on a settlement between them of the firm's affairs, Beebe conveyed all his interest in the property described, as partner, or otherwise, to Henshaw, "in trust, to sell the same at such times and places and on such terms, for credit or for cash, or for part cash and part credit, and at private or public sale, as the best interests of the said creditors of said firm and of him and myself as he may determine, and to apply the proceeds thereof to the payment of the debts of the said firm, and to the payment of what I may be found indebted to said firm or to said Ferrie Henshaw on the settlement between us of the affairs and business of said firm, and if any excess should remain in his hands from the sale of said property after the payment of said debts of said firm and of what I may owe the said firm or owe him on the said settlement of the business and affairs of said firm, then he shall pay back to me such excess; and if there should remain in his hands any of said property not required to be sold for the purposes aforesaid, then on such final settlement between us he shall reconvey the same to me, my heirs or assigns."

Plaintiffs objected to the introduction of this deed in evidence on the grounds, among others, that it "is void upon its face," and that it "sets up no claim superior to the title of the United States acquired at the execution sale." Beebe was then sworn as a witness, and defendants proposed to prove by him that at the time of the execution of the deed offered in evidence, Beebe and Henshaw were in copartnership; that at that date the partnership was indebted to various persons in amounts aggregating forty thousand dollars, and Beebe was indebted to Henshaw about two thousand dollars individually, and also about the same sum on account of partnership matters; that the property was purchased while Beebe and Henshaw were partners, and was purchased with partnership assets; that the deed had been delivered to and accepted by Henshaw; but defendants admitted that Henshaw had never sold any of the property conveyed by the deed, and that nothing had been done thereunder. The court sustained plaintiffs' objection to the introduction of the deed, and refused to allow the same to be read in evidence, and defendants excepted.

Thereupon plaintiffs offered in evidence a deed by Henshaw to Beebe, dated February 23, 1878, which recited that the debts and business affairs of the partnership had been fully settled without the necessity of having to sell any of the property for that purpose, and, therefore, Henshaw reconveyed to Beebe an undivided one half interest in and to the property. In that connection defendants "proved," (offered to prove,) that after March 22, 1877, Henshaw became incapable of attending to business; and that thereupon Beebe procured Henshaw to execute the deed of February 23, 1878, at which time the debts and business affairs of the partnership had not in fact been settled and paid.

The court instructed the jury that "if they believed the evidence the plaintiff was entitled to recover the land sued for in the complaint filed in this cause."

The following errors were assigned: "(1) The rejection of the deed executed by the plaintiff, Eugene Beebe, to Ferrie Henshaw on the 22d day of March, 1877, offered in evidence by the plaintiffs in error, conveying to said Henshaw the property involved in this cause. (2) The rejection of said deed, offered in evidence by the plaintiffs in error, in connection with the facts the plaintiffs in error proposed to prove by the testimony of the said Eugene Beebe. (3) The rejection of the testimony of said Eugene Beebe, offered by the plaintiffs in error in connection with said deed and to support the same. (4) The charge of the court to the jury ' that if they believed the evidence the plaintiff was entitled to recover the land sued for in this cause.' "

*Mr. H. C. Tompkins* for plaintiffs in error. *Mr. H. S. Cattell* was on his brief.

*Mr. Assistant Attorney General Dickinson* for defendants in error.

*Mr. George H. Patrick* filed a brief for same.

Mr. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.

The exception saved by defendants was to the refusal of the court to admit the deed of March 22, 1877, in evidence, and the first three errors assigned may be considered together.

It is the settled law of Alabama that a judgment in itself imposes no lien upon the property of the judgment debtor, real or personal, but that the issue of an execution and its delivery to the officer are necessary to create a lien. *Dane* v. *McArthur*, 57 Alabama, 448; *Carlisle* v. *Godwin*, 68 Alabama, 137; *Perkins* v. *Brierfield Iron & Coal Co.*, 77 Alabama, 403, 409.

Under section 2871 of the Code of Alabama of 1867, applicable here, executions could be levied on real property to which the defendant had a legal right, or a perfect equity, having paid the purchase money, or in which he had a vested legal interest, in possession, reversion or remainder, whether he had the entire estate or was entitled to it in common with others; on personal property of the defendant; on an equity of redemption in land or personal property.

The deed of Morris of June 14, 1873, to Beebe and Henshaw, " their heirs and assigns," conveyed an undivided one half interest in the lands to the grantees and vested in each of them an undivided one fourth interest as tenants in common. This was so held in *Southern Cotton Oil Co.* v. *Henshaw*, 89 Alabama, 448, 451, and that, " this being the case, although a partnership existed between Beebe and Henshaw, upon the death of the latter the legal title of his undivided one fourth interest descended to, and vested in, his heirs, also as tenants in common with each other and with Beebe."

Defendants conceded legal title in Beebe, but by way of answering the objection to the instrument of March 22, 1877, as on its face lacking in good faith, evidence was tendered to show that the real estate was purchased with partnership funds, though not for partnership purposes. *Hatchett* v. *Blanton*, 72 Alabama, 423, 435; Pars. Part. *365.

The evidence in this regard, such as it was, was offered in connection with the question of the admissibility of the deed of March 22, 1877, and the action of the court to which an exception was saved was solely to the refusal to permit that deed to be introduced.

If valid executions were issued and delivered to the marshal as early as January 23, 1877, and, on return, alias executions were issued and duly levied, then the subsequent sale related back and took the legal title out of Beebe, prior to March 22, 1877, so that the deed of the latter date was immaterial, and there was no error in refusing to admit it.

It is argued that the only executions shown by the record to have been issued on the judgments were those of May 10, 1877, but we do not think so. The executions of that date were alias writs, and the presumption is that they were preceded by others regularly issued. *Sellers* v. *Hayes*, 17 Alabama, 749; *Pollard* v. *Cocke*, 19 Alabama, 188. But the fact did not rest upon presumption, for these writs bore the indorsement of the receipt by the marshal, January 23, 1877, of the previous writs; their levy on the property in question, April 5, 1877; and their return April 6, 1877, for want of time to advertise the sale. And the return of the marshal covering the date of the receipt and the levy of the prior writs was duly endorsed upon the alias writs and certified to by the clerk of the court under his hand and seal. All this was admitted in evidence without objection, and if defendants desired to raise the objection that the original executions ought to be produced, they should have done so then, when, if well founded, the objection could have been removed.

The code of 1867 provided that the clerk should issue executions as soon after the adjournment of the court as practicable, within the time prescribed, namely, if the session was one week, within ten days; if two weeks, within fifteen days; if three or more weeks, within twenty days; the day, month, and year of its receipt was required to be endorsed thereon; return to be made three days before the first day of the return term, which was the next term after its date, unless issued less than fifteen days before court, and then the term next thereafter; and the reason for its non-execution in whole or in part was required to be stated in the return. §§ 2838, 2839, 2851, 2852, 2853, and 2854.

Sections 2872 and 2873 were as follows :

"§ 2872. A writ of *fieri facias* is a lien only within the

county in which it is received by the officer, on the land and personal property of the defendant, subject to levy and sale from the time only that the writ is received by the sheriff; which lien continues as long as the writ is regularly issued, and delivered to the sheriff without the lapse of an entire term.

"§ 2873. The liens of executions as between different judgment creditors, and between judgment creditors and purchasers from the defendant for valuable consideration, are hereby declared to be: that if an entire term elapse between the return of an execution and the suing out of an alias, the lien created by the delivery of the first execution to the sheriff is lost; but if an alias be sued out before the lapse of an entire term, and delivered to the sheriff before the sale of property under a junior execution, the lien created by the delivery of the first execution must be preferred."

The regular terms of the Circuit Court of the United States for the Middle District of Alabama began on the first Monday of November, 1876, and the first Monday of May, 1877, and these writs were issued, delivered and levied without the lapse of an entire term as specified in the statute. *Carlisle* v. *May,* 75 Alabama, 502. According to the settled rule in Alabama where an execution comes to the hands of the sheriff, the lien attaches and continues from term to term provided alias and pluries writs are duly issued and delivered; and, while it is so kept alive, the lien is, upon levy and sale, paramount to any intermediate conveyance of the debtor. *Parks* v. *Coffey,* 52 Alabama, 32; *Hendon* v. *White,* 52 Alabama, 597; *Childs* v. *Jones,* 60 Alabama, 352; *Perkins* v. *Brierfield Co.,* 77 Alabama, 403, 410; *Massingill* v. *Downs,* 7 How. 760, 767.

The original executions here had been duly issued and levied but returned for want of time to advertise and sell. The alias writs were then taken out, and apparently a new levy and sale made thereunder. In some jurisdictions a formal *venditioni exponas* might have been issued, but these alias writs with their indorsements thereon of the prior levy were quite as efficacious, and the sale could be sustained as made under the original or new levy.

In *Dryer* v. *Graham*, 58 Alabama, 623, 626, the Supreme Court of Alabama said: "It rests in the election of the plaintiff in execution to take out an alias execution, or a writ of *venditioni exponas*. If he desires merely a sale of the property on which a levy has been made, and not of other property, or the acquisition of a lien on other property, a *venditioni exponas* is the proper writ. The *venditioni exponas* continues the lien of the execution which has been levied, as to the property on which the levy was made, whether the property be real or personal. The writ is, indeed, merely for the continuation and completion of the original execution. And if its mandate is for the sale of land on which there has been a previous levy, it not only compels a sale, but confers the authority to sell, and the title of the purchaser has relation to the date of the lien of the execution. . . . A *venditioni exponas* is in its nature and operation, as to the property on which the levy may have been made, an alias execution. It merely commands and authorizes, as to real estate, the completion of the execution already begun."

Certainly this sale was none the less valid because there had been a levy of the original writs, and alias executions were issued and levied on the same property.

But it is contended on behalf of plaintiffs in error that no executions could have issued until March 25, 1877, by reason of the memoranda on the judgment records that "by consent execution is stayed until the 25th day of March, A.D. 1877."

Assuming that the consent for a stay was given by some one acting for the government, although that does not appear, yet from the fact that executions were issued before the expiration of the time, the presumption would be reasonable, nothing appearing to the contrary, that they were rightly issued, and that either the agreement lacked consideration, or was not authorized, or had been by mutual assent annulled, or that the terms of the agreement had not been complied with by defendants.

The Supreme Court of Mississippi held in *Jones* v. *Bailey*, 5 How. (Miss.) 564, where plaintiffs agreed to stay of execution for a certain time, "unless defendants consent for its

issuance sooner," and execution was issued without regard to the agreement and property sold, that the presumption was that it issued with the consent of defendants.

The marshal's return on the original writs showed that notice of the levy thereof was given Beebe in writing as required by statute, (§ 2857,) and the fact that he did not complain that the executions had been issued contrary to agreement renders the presumption that they were not obnoxious to that objection well nigh, if not altogether, unanswerable.

Aside from this, as the executions were in fact issued, and received by the marshal January 23, 1877, the question thus suggested would be whether the executions were voidable or absolutely void, if the consent for a stay was lawful and the executions were taken out in violation thereof.

In Freeman on Executions, (2d ed.) §§ 25, 26, *et seq.*, a text book cited and relied on in numerous decisions of the Supreme Court of Alabama, it is said that the decided preponderance of authority is in favor of the proposition that the premature issue of an execution is an irregularity merely; that the execution is erroneous but must be respected and may be enforced until it is vacated in some manner prescribed by law; that no one but the defendant can complain of it, and even he cannot do so in any collateral proceeding. And among other cases, *Blaine* v. *The Ship Charles Carter*, 4 Cranch, 328, is cited, which was decided by Chief Justice Marshall on circuit and his decree affirmed by this court, Mr. Justice Chase delivering the opinion. In that case, under an act of Congress providing that "until the expiration of ten days, execution shall not issue," certain executions were collaterally objected to on the ground that they were issued within ten days, and the court said: "If irregular, the court from which they issued ought to have been moved to set them aside; they were not void, because the marshal could have justified under them, and if voidable, the proper means of destroying their efficacy have not been pursued." So, an execution issued after a year and a day is voidable but not void; even the defendant cannot attack it collaterally; and a levy and sale, made under it, are sufficient to transfer his

title.   Freeman, § 29.   In *Brevard* v. *Jones,* 50 Alabama, 221, 242, this was so held, and the court remarked : "It can make no difference if the plaintiff in execution is the purchaser, because, the question is not one of notice, but of the *status* of the execution."

. In *Steele* v. *Tutwiler*, 68 Alabama, 107, 110, the Supreme Court of Alabama referred to *Morgan* v. *Evans*, 72 Illinois, 586, which ruled that an execution was not void but voidable where it issued on a dormant judgment after the time limited by statute ; and *Stewart* v. *Stocker*, 13 S. & R. 199, where a similar ruling was made in respect of an execution issued on a judgment confessed prematurely, contrary to the terms of a bond ; and the court said : " In all such cases, though the execution may be erroneous, and irregular, it must be respected and enforced, until vacated by motion to quash, or in some other manner prescribed by law.   Freeman on Ex. § 25.   And it is the duty of the party seeking to take advantage of irregularities or defects of this character to move with proper diligence, at the earliest opportunity.   Undue *laches* is treated as a waiver of the right, and operates as an irrevocable renunciation of it.   Freeman on Ex. §§ 76, 30.   And after a delay of seven years in this case, without explanation or excuse, we think the motion comes too late."   And to the same effect see *Henderson* v. *Henderson*, 66 Alabama, 556, 558.   Again, it is held that executions issued contrary to agreement between the parties are subject to the same rules as other premature executions.   In *Cody* v. *Quinn*, 6 Ired. (Law) 191, 193, it was decided that a memorandum made on the docket with the consent of the parties by the clerk " No *fi. fa.* to issue until October or until ordered," was no part of the judgment, and if execution were issued before then it was not void.   In *Townsend* v. *Fontenot*, 42 La. Ann. 890, which was a suit to restrain the execution of a judgment recovered in a suit to enforce payment of certain notes with recognition of a mortgage and vendor's privilege, the judgment contained the following statement, prepared and written by plaintiff's counsel, and inserted by plaintiff's instructions : " The attorney of plaintiff in this suit declares he has been instructed not to seize or sell said

property before the end of the year;" and it was held to operate a stay of execution.

But in the case in hand the judgment records are complete and perfect in themselves, and executions were thereby ordered to issue. The entries as to stay purported to be memoranda of an agreement of counsel, were evidently placed where they were as memoranda merely, and did not form part of the judgments. Even if the entries could be treated as the act of the court, and the executions were improperly issued, which is not to be presumed under the circumstances disclosed by this record, they would not have been absolutely void and incapable of being validated.

So far as appears, Beebe never took any steps to quash the executions or to vacate the levy, if any ground existed for doing so, and the evidence that they issued and were levied was admitted without objection on the trial. We regard the position now taken on his behalf as destitute of merit. The Circuit Court properly excluded the deed of March 22, 1877, and, this being so, no error was committed in the charge to the jury.

*Judgment affirmed.*

MR. JUSTICE GRAY, who was not present at the argument, and MR. JUSTICE PECKHAM, who was not then a member of the court, took no part in the decision.