In the Matter of the Petition and Articles of Association of the LITTLE RIVER DRAINAGE DISTRICT; OTTO KOCHTITZKY et al., Petitioners, v. ST. LOUIS, MEMPHIS & SOUTHEASTERN RAILROAD COMPANY, Now the ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, et al., Objectors, Appellants.

**In Banc, July 3, 1911.**

1. **DRAINAGE DISTRICT: Petition for Articles of Association: Sufficiency.** A petition for articles of association, and the articles themselves, sufficiently state the manner of draining the lands, and sufficiently describe the beginning, course and terminus of the proposed drains, if they set forth particularly the facts that the statute requires to be stated therein, if the statute itself is valid.

2. ————: ————: **Description of Lands and Drains: Survey.** The petitioners for the organization of a drainage district are not required to anticipate and state facts in their petition which are not ascertainable until after the petition and objections have been passed upon. The law provides that after the district has been incorporated and the supervisors have been selected and the board organized, an engineer shall be appointed, and such engineer shall, for the first time, make a survey of the district and submit to the board a plan for the reclamation

and drainage of the lands remaining and included in the drain-age district as organized; and it is not required that either the petition or the articles should anticipate what those plans or survey will be.

3. ———: ———: **Details.** A petition for the organization of a drainage district for the purpose of having the land within its limits "reclaimed and protected from the effect of water by drainage, ditches, levees, dykes or otherwise," is sufficient without going into the details as to what ditches, levees and dykes are necessary, where they are to be located, how constructed, or what is meant by the "or otherwise," without further stating whether the district is to be organized for sanitary or agricultural purposes, or for the general welfare by reclaiming and protecting the lands within its limits "from the effects of water by drainage or otherwise." The statute does not require such details to be set out in the articles of association.

4. ———: **Objections: To Organization and to Including Objectors' Lands.** There is a radical difference in the character of the inquiry (1) as to why the district should not be incorporated and (2) as to why objector's land or any part thereof will not be benefited by the proposed drainage and should not be included within the district. If no objections were made by the land-owners, it would still be incumbent upon the petitioners to satisfy the court of the practicability of the proposed improvement; but the land-owner can interpose objections to the proposed organization, as well as to the inclusion of his lands in the districts.

5. ———: ———: **To the Organization: Questions to Be Considered: Sufficient Objections for Review.** In determining whether the drainage district should be incorporated, the inquiry should not be unduly restricted. Evidence of any fact that would be a substantial reason against the incorporation is competent. That the effects of the water are not so injurious as to justify the cost of the improvement; that the drainage of the land is impracticable for want of sufficient fall to carry off the water, or because of no outlet or channel into which the water may be drained; that other lands not included in the proposed district would be benefited equally with those that are included, and probably many other facts, are competent upon the issue that the district should not be incorporated. But none of these facts can be considered on appeal if appellants' objections are directed only towards the sufficiency of the articles of association and the petition therefor, and to reasons why their lands should not be included within the district.

Little River Drainage District v. Railroad.

6. ———: **Articles of Association: Details of Plan: Constitutionality of Statute.** A statute which requires notice to the land-owner of the proposed formation of a drainage district, *is not unconstitutional because it does not require the articles* of association and the petition therefor to inform the non-petitioning land-owners of the details of the plan of drainage before the district is formed.

7. ———: **Public Benefits: Recitation in Statute: Reclamation: Police Power.** *It is not necessary to the validity of the* drainage law that it recite the benefits to be effected by the drainage system. The police power of the State may be invoked to make swamp and overflow lands fit for use, productive and habitable. And the Act of Congress, of which the court will take judicial notice, ceded swamp lands to Missouri for the purpose of reclamation, and the State early set in motion a plan to carry out said purpose.

8. ———: **Ownership of Land: Conflicting Evidence.** Where there is evidence tending to show the defendant to be the owner of the lands as described in the articles of association, the Supreme Court will not review the conflicting evidence on that point.

9. ———: **No Damage.** Lands are not to be excluded from the drainage district simply because they are damaged by water "only in high and unusual freshets." The extent to which a tract of land will be benefited does not go to the question of the propriety of including it in the drainage district, but rather to the amount of benefits to be assessed against it as compared with other lands in the district.

10. ———: **Including Lands Embraced in Another District.** The fact that the land included in a drainage district forms a part of an existing district is not a valid objection to including it in the proposed district.

11. ———: **Objections: Amendment During Trial.** Objections had been filed by the land-owners two years before the trial and a change of venue had been awarded to another circuit court. After petitioners had closed their case, the objectors offered testimony tending to prove why the district should not be incorporated. That testimony being excluded for the reason the written objections did not raise such an issue, objectors asked leave of the court to amend their objections by adding one to the effect that "the proposed drainage of the land is not feasible, but highly impracticable." *Held,* that the proposed change, being requested upon the eve of the submission of the case, would have materially changed the issues, and the court did not err in refusing objectors' request.

Appeal from Butler Circuit Court.—*Hon. J. C. Sheppard*, Judge.

AFFIRMED.

*W. F. Evans, Moses Whybark* and *A. P. Stewart* for appellants.

(1)   The petition for articles of association of The Little River Drainage District fails to state the mode and manner of draining the district, and fails to contain a plain description of the commencement, the line and termination of the drains proposed, and the proceedings are void for that reason.   Drainage, as to selection of routes, is entirely a different proposition to that of selecting a route for a street or other highway on land—everyone can locate a highway on land by boundary marks given, and be advised of its practicability and feasibility, but plans protecting lands from water can only be ascertained by scientific investigation, and taxpayers have a right to demand that before the enterprise is entered upon it shall have been determined to be practical, and that the general character of the improvement shall be designated.   They are entitled to pass upon the question whether or not the improvements shall be made, and they can exercise no intelligent judgment until they know the plan. They also have a right to have the plans fixed so that no departure from them shall be effected during the progress of the work.   2 Farnham on Waters and Water Rights, p. 1020, sec. 205, p. 1035, sec. 210, p. 1037, sec. 212.   (2)   In none of the proceedings by the petitioners for the incorporation of the district is any route or plan designated.   The petition asks for the incorporation of the district for the purpose of having the land within its limits "reclaimed and protected from the effects of water by drainage, ditches, levees, dykes or otherwise," and for this purpose to dig the

necessary ditches and trenches and throw up the nec-
essary dykes and levees. It enumerates the means to
be employed to accomplish the result, but is silent as
to plans. R. S. 1909, sec. 5496. (3) Any owner of
real estate in the district, who has not signed the ar-
ticles of association on or before the first day of the
term of court he has been summoned to appear, may
file objections to the organization, and assign reasons
given him by the statutes, as follows: 1st, why the
drainage district should not be organized and incorpo-
rated; 2d, why his land or any part thereof will not
be benefited by the proposed drainage; 3d, why his
land should not be embraced in the drainage district
and made liable to taxation for draining the same.
R. S. 1909, sec. 5499. The only day he ever has in
court to object to the organization, etc., of the district,
is given to him by the above section. (4) He is
given by the statute no right to contest the plan of
drainage required to be made by the district after it
is organized. R. S. 1909, secs. 5511, 5512, 5514. And
to the report of the commissioners his only right is to
except to any assessment for benefits or damages. R.
S. 1909, sec. 5518. (5) Under the foregoing authori-
ties the petition for incorporation failed to state facts
sufficient to authorize the incorporation of the district
as to the non-petitioning landowners, and it ought to
have been dismissed as to these appellants. (6) If
the petition is supported by the statute, as maintained
by the petitioning landowners, then Secs. 5496 and
5499, R. S. 1909, are void for uncertainty as to these
appellants, and all other landowners in the district
who did not sign the articles of association, because
these sections express no intelligent rule of action, and
this court cannot supply such omissions in the statute.
State ex rel. v. Railroad, 146 Mo. 155. (7) In the ab-
sence of plans of drainage submitted to the court with
the petition, if such procedure is sanctioned by Sec.
5496, and other sections of Art. 1 of Chap. 41, R. S.

1909, relating to the organization of the district, then these statutes, as to the appellants who did not sign the petition, deny to them their day in court, according to authorized procedure granted by Sec. 5499 of the statutes, and deprive them of their property without due process of law. They would have no intelligent way of supporting their objections by showing why the drainage district should not be organized and incorporated, or why their land or any part thereof would not be benefited by the proposed drainage, or should not be embraced in the district and made liable to taxation for draining the same, as provided in Sec. 5499, and the effect of the statute would be to condemn them without hearing, proceed against them without inquiry, and render judgment against them without trial; and the statute would violate the Constitution of the State. Constitution, art. 2, sec. 30; St. Louis v. Richeson, 76 Mo. 470; Asphalt Co. v. Ridges, 169 Mo. 376; Bank v. Cornwell, 126 Mo. 43; Jones v. Gore, 142 Mo. 38; Henning v. Staed, 138 Mo. 430; Kuntz v. Sumption, 2 L. R. A. (Ind.), 655; In re Gannon, 5 L. R. A. (R. I.) 359; Ullman v. Baltimore, 11 L. R. A. (Md.) 244; Gillman v. Tucker, 13 L. R. A. (N. Y.) 304. (8) The statute, under the facts in this case, also violates Sec. 1 of Art. 14 of the Amendments to the Constitution of the United States which prohibits the state from depriving any person of property without due process of law, or denying to any person, within its jurisdiction, the equal protection of the law. The proceeding in this case, if sanctioned by the statute, cannot be maintained as to these appellants under the pleadings and evidence without violating Sec. 1 of that amendment, since no opportunity has been afforded them to have a hearing. U. S. Constitution, art. 14, sec. 1; Bannon on the 14th Amendment, pp. 139-144; Ins. Co. v. Daggs, 172 U. S. 563. (9) The legislative authority to enact drainage laws is derived from the police power of the State. Land Co. v. Miller, 170 Mo. 253;

2 Farnham on Waters and Water Rights, p. 902; Hamilton, Law of Special Assessments, sec. 263, p. 222 and sec. 43, p. 31; Drainage Dist. v. Shroer, 145 Ind. 572; Zigler v. Mengers, 121 Ind. 99; Railroad v. People, 200 U. S. 561.   (10)   Art. 1 of Chap. 41, R. S. 1909, is not for the public benefit.   It does not purport to be an exercise of the police power; it nowhere provides that the drainage shall be for the benefit of the public health, public morals, public safety or for the general well-being of the community.   Statutes which authorize the drainage of land without requiring that the proposed drainage shall benefit the public health or otherwise be of public utility, are unconstitutional. In re Drainage Dist., 90 Wis. 301; Reeves v. County, 8 Oh. St. 333; Thompson v. County, 11 Oh. St. 678; Drainage Dist. v. Shroer, 145 Ind. 572; Fleming v. Hull, 73 Iowa 598; Kinnie v. Bare, 68 Mich. 625; Tillman v. Kircher, 64 Ind. 104; Wishmier v. State, 97 Ind. 160.

*Oliver & Oliver* for respondents; *J. M. Blazer* of counsel.

(1)   The Legislature has the inherent power, in the first instance, to organize and establish drainage districts, levee districts, special taxing districts, etc., and to charge the costs of constructing the local improvements, in whole or in part, to the property within the limits of such district.   St. Louis v. Russell, 9 Mo. 507; St. Louis v. Allen, 13 Mo. 400; Giboney v. Cape Girardeau, 58 Mo. 141; Kelley v. Meeks, 87 Mo. 396; Levee Co. v. Harden, 27 Mo. 495; Columbia Co. v. Meier, 39 Mo. 53; Morrison v. Morey, 146 Mo. 561; Land Co. v. Miller, 170 Mo. 240; Prior v. Construction Co., 170 Mo. 451; Page & Jones on Taxation by Assessment, p. 892, sec. 553; Construction Co. v. Shovel Co., 211 Mo. 524; Meier v. St. Louis, 180 Mo. 391. (2)   Since the Legislature has the inherent power and

right to organize and create drainage districts directly, it also has the power and authority to delegate to such agency of the State as it may name, the right and power to organize and create such districts for it. This has long been the law in this State, as well as elsewhere, and the constitutionality of such a law cannot now be successfully questioned. Levee Co. v. Harden, 27 Mo. 495; Laws 1859, p. 284; Columbia Bottom Co. v. Meier, 39 Mo. 53; Laws 1879, p. 132; Land & Stock Co. v. Miller, 170 Mo. 240; sec. 5496, R. S. 1909; Morrison v. Morey, 146 Mo. 561; Ross v. Board, 1 L. R. A. (N. S.) 431; State v. King, 37 Ia. 462; Hagar v. District, 66 Cal. 54; Voigt v. Detroit, 123 Mich. 547, 184 U. S. 115; Hagar v. District, 111 U. S. 701; Irrigation Dist. v. Bradley, 164 U. S. 111; Page & Jones, Taxation by Assessment, p. 905, sec. 555-6; 2 Farnham on Water and Water Rights, sec. 170; Shaw v. State, 97 Ind. 23; Crites v. State, 97 Ind. 389; District v. Hagar, 66 Cal. 54; Meranda v. Spurlin, 100 Ind. 380; Hudson v. Bunch, 116 Ind. 63; Buchanan v. Roeder, 97 Ind. 605; Hagar v. District, 111 U. S. 701. (3) The constitutional right of notice and to contest the amount of the benefit assessed against appellant is given it by Secs. 5517 and 5518, R. S. 1909, but it has no constitutional right to appeal from the legislative act, or the act of a duly authorized agent of the Legislature, incorporating the district. Williams v. Eggleston, 170 U. S. 340; Page & Jones on Taxation by Assessment, sec. 739; Construction Co. v. Shovel Co., 211 Mo. 524; Meier v. St. Louis, 180 Mo. 391. The statute does not deny the non-petitioning landowners their day in court. It is again given a day in court and an opportunity, by sections 5517 and 5518, to object to any assessment that may be made. An opportunity, we may say, *dehors* this record it has availed itself of. Page & Jones, Taxation by Assessment, sec. 743; Land Co. v. Miller, 170 Mo. 240; Spencer v. Merchant, 125 U. S. 345. It is not neces-

sary that the statute should require the recital in the petition or articles of association, that the contemplated improvements would improve the public health, convenience and welfare of the community. The Legislature might have done so, but its failure to do so in no way impairs the validity or constitutionality of the act. The reclamation of these lands by a system of drainage will enure to the public good, not only by rendering them suitable for agricultural purposes, but will also very materially benefit the public health and prosperity of this State by the enhancing of its revenues. All of this the State can do under its police power, and without making any reference to or recital of the same in the statute. The public health may be, and ought to be, an important factor in the consideration of statutes of this kind. The drainage of large tracts of overflowed land will operate beneficially to the public health and welfare of the State. Either of these reasons are sufficient to support and sustain legislation on that subject, whether recited in the statute or not. Land Co. v. Miller, 170 Mo. 240; State v. Commissioners, 60 L. R. A. 161; Wurts v. Hoagland, 114 U. S. 606; Irr. Dist. v. Bradley, 164 U. S. 111; Hagar v. District, 111 U. S. 701; Head v. Mfg. Co., 113 U. S. 9; Hagar v. County, 47 Cal. 222; Irrig. Dist. v. Williams, 76 Cal. 360; In re Irrig. Dist., 92 Cal. 296; Cooley on Taxation (2 Ed.), p. 617; Cooley's Const. Limitation (6 Ed.), p. 704; 2 Farnham on Water and Water Rights, sec. 170; Wilson v. Dist., 113 Ill. 443; Railroad v. Illinois ex rel., 200 U. S. 561. (4) The petition and articles of association in this case follow the statute and the precedent established in Land Co. v. Miller. This is sufficient. Land Co. v. Miller, 170 Mo. 240; Ross v. Board, 1 L. R. A. (N. S.) 437; Voigt v. Detroit, 123 Mich. 547, 184 U. S. 115; Hagar v. Dist., 111 U. S. 701; State ex rel. v. County, 41 Ohio St. 423. (5) The only thing appellant or any other landowner in the district could inquire into at this stage

of the proceeding,—the incorporation of the district,—was as to whether or not its land and property would be benefited by the incorporation of this district, and by controlling and keeping off the waters that constantly affect and surround some parts of its property all the time and other parts of it for many months during the year. This information, however, could not be obtained until after the district is organized, and it is both unreasonable and unjust to assume that this information should be stated in advance in the petition, or in the articles of association seeking to establish the district. Secs. 5507, 5508, 5509, 5510 and 5511, R. S. 1909; Ross v. Board, 1 L. R. A. (N. S.) 431; State ex rel. v. Stewart, 74 Wis. 620.

KENNISH, J.—This is an appeal from a judgment of the circuit court of Butler county, ordering, adjudging and decreeing the incorporation of The Little River Drainage District, a corporation organized under the provisions of article 1, chapter 41, Revised Statutes of 1909, for the reclamation of about five hundred thousand acres of swamp and overflowed lands in the southeastern part of this State. The lands sought to be reclaimed are in the counties of Bollinger, Cape Girardeau, Stoddard, Scott, New Madrid, Dunklin and Pemiscot. They form a contiguous body of land from one to eleven miles in width, extending in a southerly direction for a distance of about ninety miles, from Cape Girardeau on the north, to the boundary line between Missouri and Arkansas. Streams and watercourses heading in the higher adjacent territory carry their waters to these low lands where, because of insufficient channels, the waters overflow and render much of the land uncultivable and uninhabitable. This land has a uniform fall to the south of about one foot to the mile and therefore is susceptible of drainage.

A larger area of the lands in the proposed district being situated in New Madrid than in any other county, the petition, in accordance ,with the statute, was filed in the office of the clerk of the circuit court of that county. All of the non-petitioning land-owners, except those who had waived service and entered their appearance, were duly summoned to appear before the circuit court of New Madrid county at the March term, 1906.

Among other objectors, appellants, The St. Louis, Memphis and Southeastern Railroad Company, St. Louis and Gulf Railway Company and John V. Filley, trustee under several mortgages upon the said railroads, appeared at the March term of said court and jointly filed objections to the petition and articles of association. On the application of one of the individual objectors a change of venue was awarded to the circuit court of Butler county, in which court, upon the——day of November, 1907, upon a hearing of the issues made by the petition and the objections thereto, the court sustained the objections in part on the ground that some of the lands of the objectors would not be benefited by the proposed drainage and excluded such lands from the proposed district. The other objections were overruled and the court ordered and adjudged the district duly incorporated, from which order and judgment the appellants herein appealed to this court.

The petition and articles of association are of too great length to be set out in this opinion. A careful examination has satisfied us that in form they are in accord with the statute and, under the law as declared by this court in the case of Mound City Land and Stock Company v. Miller, 170 Mo. 240, they must be held sufficient unless some of the objections, which counsel for appellants contend are now made for the first time against such a proceeding, are well founded. The objections, as made in the trial court and urged

on this appeal against incorporating the district, will be taken up and considered in the order and as stated in appellants' brief.

I.  It is first contended that: "The petition for articles of association of the Little River Drainage District fails to state the mode and manner of draining the district, and fails to contain a plain description of the commencement, the line and termination of the drains proposed, and the proceedings are void for that reason."

This objection is more in the nature of an attack on the law than upon the sufficiency of the petition. The law (Sec. 5496, R. S. 1909) expressly provides what facts shall be stated in the articles of association, all of which are set forth with particularity in the petition and articles in this case.  Therefore, if the law is valid, the petition and articles, being in full compliance therewith, must be upheld against appellants' attack.

The law under which petitioners are proceeding provides that after the district is incorporated and the supervisors have been selected and the board organized, an engineer or board of engineers shall be appointed and such engineer or board of engineers shall then, for the first time, make a survey of the district and submit to the board of supervisors a plan for the reclamation and drainage of the lands; not the lands described in the articles of association, as filed with the circuit clerk and to which the objections are filed, but the lands remaining and included in the district as incorporated by the order and judgment of the court.  It is plain from these provisions that the petitioners were not required to anticipate the orderly course thus prescribed by stating in the petition facts which were not legally ascertainable until after the petition and objections had been passed upon by the court and the district incorporated.

II.   The second complaint does not differ mate-
rially from the first.  Appellants say:  "In none of
the proceedings by the petitioners for the incorpora-
tion of the district is any route or plan designated.
The petition asks for the incorporation of the dis-
trict for the purpose of having the land within its lim-
its 'reclaimed and protected from the effects of water
by drainage, ditches, levees, dykes or otherwise,' and
for this purpose to dig the necessary ditches and
trenches and throw up the necessary dykes and levees.
It enumerates the means to be employed to accom-
plish the result, but is silent as to plans, and the ques-
tions are suggested:

"1st.   What ditches, levees and dykes are neces-
sary; where are they; how are they to be constructed?

"2d.   What is the 'or otherwise?'

"3d.   Is the drainage district to be organized for
sanitary or agricultural purposes, or for the general
welfare by reclaiming and protecting the land within
its limits 'from the effects of water by drainage or
otherwise,' as provided for by section 5496, Revised
Statutes 1909?"

A sufficient answer to these questions is that the
law does not require such details to be set out in the
articles of association.  Objections were made to the
incorporation of the drainage district in the case of
Mound City Land & Stock Company v. Miller, supra,
as shown by the files in the office of the clerk of this
court, substantially the same as that now under con-
sideration.  Among them were the following:

"The incorporation is sought to be established,
first, without any effort or attempt to locate, desig-
nate or determine where any drains or dykes shall be
located, if they even propose to make them.

"Your objectors and no other land-owner can de-
termine from the sweeping statement of the objects
of the so-called organization whether his lands will be

benefited, injured, ruined or confiscated by the so-called 'corporation.'

"Your objectors say that they ought not to be subjected to the burdens of an incorporation or association without any preliminary survey or attempt to determine whether the result would be beneficial, or useful to the public generally or to the objectors' lands."

Against such objections in that case this court sustained the petition and articles of association, which in form were almost identical with those in the case at bar, and adhering to the law as there declared we rule against appellants upon this point.

III. Under the statute the non-petitioning own-er of land in the proposed district, when brought into court, may file his objections stating "why such drain-age district should not be organized and incorporated, or why his land, or any part thereof, will not be ben-efited by the proposed drainage, or should not be embraced in said drainage district, and made liable to taxation for draining the same." [Sec. 5499, R. S. 1909.]

Appellants make the point that the only day the objector has in court to contest the organization of the district is when the petition and articles of associ-ation are heard by the court; that it is too late to raise the question after the district is incorporated, and they complain that full opportunity was not af-forded objectors by the court to present their objec-tions and testimony in support thereof as to why the district should not be incorporated.

It is apparent that there is a radical difference in the character of the inquiry under the first ground of objection, namely, why the district should not be incorporated, and the second ground, why the object-or's land or any part thereof will not be benefited by the proposed drainage and should not be embraced

in the district. If no objections were made by the land-owners, it would still be incumbent upon the petitioners to satisfy the court as to the practicability of the proposed improvement, and in allowing the landowner to interpose this general objection the Legislature doubtless had in view the bringing out of the facts upon the issue thus made as to the practicability of the proposed drainage scheme, as well as upon the question whether the objector's lands should be included in case the district should be organized. Upon the first ground of objection the scope of the investigation should not be unduly restricted and evidence of any fact that would be a substantial reason against the incorporation of the district is competent. That the effects of the water were not so injurious as to justify the cost of the improvement; that the drainage of the land is impracticable for want of sufficient fall to carry off the water, or because of no outlet or channel into which the water may be drained; that other lands not included in the proposed district would be benefited equally with those that are included, all of these facts and probably many others, would be competent upon the issue why the district should not be incorporated. However, an examination of the nine objections filed by the appellants discloses the fact that they were levelled against either the sufficiency of the petition and articles of association, or against the law, or that the objectors' lands would not be benefited and should not be included in the district. No objection was filed as to why the district should not be incorporated (unless the alleged unconstitutionality of the law be so considered), and appellants therefore are not in a position to complain of the rulings of the court in excluding testimony upon that issue. It should be added, however, that there was ample testimony introduced as to the necessity and feasibility of the proposed drainage to warrant the finding of the court.

IV. Appellants make the same complaint against the constitutionality of section 5499, Revised Statutes 1909, and the other sections of the law upon which this proceeding is based, as was made against the sufficiency of the petition and articles of association, namely, that as the plans for the proposed drainage were not required to be set out in the petition and articles of association, the objectors have no intelligent means of supporting their objections and they are therefore deprived of their property without due process of law.

In making this contention the appellants overlook the fact that it is not necessary to the constitutionality of the statute providing for the incorporation of the drainage district that any notice whatever should be given to the landowner in laying out and determining the district. [2 Page & Jones on Taxation by Assessment, sec. 743; Ross v. Board of Supervisors, 1 L. R. A. (N. S.) 437; Mound City Land and Stock Company v. Miller, supra; Spencer v. Merchant, 125 U. S. 345.]

In Page & Jones, supra, the authors say: "Notice of proceedings to determine the assessment district need not be given in the absence of statutory provision therefor, as owners have no constitutional right thereto." And in Ross v. Board of Supervisors, supra, l. c. 437, the court said: "Appellant takes the position that the landowner is entitled to notice and hearing as to the extent of this district, and whether his land shall be included therein, and that the failure to provide for such notice and hearing renders the statute unconstitutional. In our opinion, the objection is unsound. The division of a state or lesser municipal territory into districts for the purpose of taxation or public improvement is a legislative matter, and the citizen affected thereby cannot complain because the power is exercised without notice to him. If, for instance, the Legislature saw fit to divide the

entire state into drainage districts, and make the lands in each district chargeable with .the expense of such drains therein as the public welfare might demand, we apprehend that such legislation would be open to no serious constitutional objection on the ground that it deprives the landowners of property rights without due process of law. That such legislative power for local purposes may be delegated by the Legislature to minor municipalities is a matter of universal recognition and constant practice.''

If a statute which does not require any notice to the land-owner of the proposed formation of a drainage district is not unconstitutional for that reason, it is clear that the statute under consideration, which does require such notice, cannot be successfully assailed on the ground that it does not fully inform the land-owner as to the details of the plan of drainage before the district is formed. The law does provide for full and complete information and notice of the ''plan for drainage'' before the assessment of benefits, and gives to every landowner the right to be heard and to a trial in court before a charge can be placed against his land, and when accorded such right it cannot be maintained that he is denied his day in court. In the case of Spencer v. Merchant, supra, the highest court in the land declared the law to be, as concisely stated in the syllabus, that: ''If the legislature of a State, in the exercise of its power of taxation, directs the expense of laying out, grading or repairing a street to be assessed upon the owners of the lands benefited thereby; and determines the whole amount of the tax, and what lands, which might be so benefited, are in fact benefited; and provides for notice to and hearing of each owner, at some stage of the proceedings, upon the question what proportion of the tax shall be assessed upon his land; there is no taking of his property without due process of law, in

violation of the Fourteenth Amendment to the Constitution of the United States.''

Neither is it necessary that the drainage law should recite the public benefits to be effected and upon which the validity of the law must rest. In the case of Morrison v. Morey, 146 Mo. l. c. 563, this court said: ''We take judicial notice of the fact that overflows are followed by disease, resultant from the decaying deposits left by the water, and that such disease is not and cannot be confined to a single family, but spreads among the people of the locality without any fault of theirs, and which they are powerless to prevent.'' So will this court take judicial notice of the fact that the swamp and overflowed lands sought to be drained by this proceeding were granted to this State by Act of Congress September 28, 1850, to enable the State ''to construct the necessary levees and drains to reclaim the swamp and overflowed lands therein, the whole of those swamp and overflowed lands made unfit thereby for cultivation, which shall remain unsold at the passage of this act, shall be and the same are hereby, granted to said State,'' and that the next General Assembly of this State, Session Laws 1850-1851, page 232, passed an act appointing a board of commissioners for the purpose of having these lands surveyed and ''to devise some safe, expedient, economical and practicable plan for the reclamation of said lands from their present wet condition and liability to overflow and for rendering the same tillable and fit for cultivation.''

The power of the State to provide by legislation for the reclamation of said lands was thus recognized in the provisions of the act through which the State secured its title thereto and by the Legislature of this State by the law enacted in accordance with the purpose for which the lands were granted.

The right of the State, in the exercise of its police power, to drain lands for the purpose of protect-

ing the health of the people is generally conceded, and if such power may be invoked to protect the health of the people inhabiting swamp and overflowed lands, it may also be invoked to make such lands fit for use, productive and habitable, and so the courts have held. [Mound City Land and Stock Company v. Miller, supra, l. c. 258; Hagar v. Reclamation District, 111 U. S. 701; Falbrook Irrigation District v. Bradley, 164 U. S. 112; C. B. & Q. Ry. Co. v. Drainage Commissioners, 200 U. S. 561; State ex rel. v. Board of County Commissioners, 87 Minn. l. c. 336; Irrigation District v. Williams, 76 Cal. l.,c. 367.]

V.  The court did·not err in its finding as to the ownership of the property belonging to appellant, The St. Louis and Gulf Railway Company. There was evidence tending to prove the ownership·as alleged in the articles of association, and, as stated by this court in the Mound City Land and Stock Company case, supra, "this court will not review the findings of fact when the evidence is conflicting."

Neither did the court err in refusing to give instruction numbered 6 at the request of the objector, the St. Louis, Memphis and Southeastern Railroad Company. It does not follow that land should be excluded from the district because damaged by water "only in high and unusual freshets." Such damage may be sufficiently injurious to justify including the land in the district. The extent to which a tract of land will be benefited does not go to the question of the propriety of including that land in the drainage district, but rather to the amount of benefits to be assessed against that tract as compared with the other lands in the district. Sec. 5516, R. S. 1909.

VI.  The fact that the land is a part of an existing drainage district and has paid benefits therein, is not a valid objection to including it in the proposed district, and the court properly refused object-

ors' instruction numbered 8.    [1 Page & Jones on Taxation by Assessment, sec. 550; South Highland Land & Improvement Company v. Kansas City, 172 Mo. 523.]

VII.  The most serious question presented on this appeal is the action of the court in refusing permission to objectors to amend their written objections during the trial of the case.

After the petitioners had closed their case in chief, the objectors offered testimony tending to prove why the district should not be incorporated. The petitioners objected to such testimony for the reason that the written objections did not raise such an issue, and the objection was sustained by the court. Thereafter, and before the objectors closed their testimony, they asked leave of court to amend their objections by adding the additional objection that "the proposed drainage of the land was not feasible but highly impracticable," which leave the court refused.

It is the well recognized policy of the law that courts should be liberal in allowing amendments in furtherance of justice. On the other hand it has been said by this court that: "While our statutes are liberal in allowing amendments in aid of justice, it has been uniformly ruled by the courts of appeal and this court that the circuit courts are not bound to permit an amendment to an answer which substantially changes the defense on the eve of the trial of the cause. [Harrison's Administrator v. Hastings, 28 Mo. 346; Clark v. Transfer Co., 127 Mo. l. c. 270; Bank v. Goldsoll, 8 Mo. App. 595.]" See also Laughlin v. Leigh, 226 Mo. l. c. 639.

Appellants had filed their objections nearly two years before the trial. After the issues had been made up a change of venue, on the application of an objector, had been awarded to a circuit distant from the

court in which the proceedings were filed. Leave to amend was not asked until the eve of the submission of the cause and the proposed amendment would have materially changed the issues. In view of these facts we hold that the court did not err in refusing permission to make the amendment.

It follows from the foregoing consideration of the matters complained of by appellants that the judgment should be affirmed. It is so ordered. All concur.