CALVIN CARDER et al., Appellants, v. FABIUS RIVER DRAINAGE DISTRICT NO. 3, D. A. FRAZEE et al.

In Banc, December 19, 1914.

1. **MOTION TO STRIKE OUT: No Exception.** In order that the action of the court sustaining defendant's motion to strike out a part of plaintiff's petition may be reviewed on appeal, it was necessary that an exception be saved to the ruling and be incorporated in a bill of exceptions. A motion to strike out a part of a pleading cannot be considered a demurrer, or a part of the record proper, and cannot be preserved for review as other record matters.

2. **DRAINAGE DISTRICT: Fraud: Injunction: Misrepresentation as to Costs and Location.** The work of constructing and maintaining a drainage district cannot be halted for that some of the men who afterwards became supervisors, in circulating the petition for the incorporation of the district for signatures among the landowners, represented to them that the cost of excavation would not exceed seven cents per cubic yard and that the main drainage ditch would be located on low ground or along a certain line. At that time the men were not members of the board of supervisors, and any misrepresentations they made are not binding on the district subsequently organized.

3. ————: ————: **Cost of Construction.** The circuit court, in which the proceeding for the incorporation of a drainage district is begun and finally consummated, judicially determines, upon

the presentation of a petition by landowners for articles of incorporation, whether the costs of the proposed improvement will be out of proportion to the benefits that will accrue both to the district as a whole and the several parcels of land therein; if the court finds the estimated costs will exceed the benefits it disapproves the report of the commissioners appointed to determine the question of damages and benefits, and thereupon the incorporation is dissolved; and these things the petitioners are presumed to know and have in mind when they attach their names to the petition. Therefore, the estimated cost of the landowners who circulated the petition, that the total cost will be so much per cubic yard or so much per acre, whether their estimate was too-large or too small, cannot be used to imperil the corporation or to destroy it, or to stop the work of construction.

4. ———: **Conspiracy to Locate Ditch.** A conspiracy between the members of the board of supervisors to locate the drainage canal in such a way as to favor the interests of themselves and of other landowners, which the evidence shows failed of its purpose, the result being that the ditch was not located where they desired it located, will not authorize a decree enjoining the construction and maintenance of the ditch.

5. ———: ———: **Barren of Results.** A barren and abandoned conspiracy, sounding in words but void of substance in either acts or results, is not actionable, unless there is a statute making it actionable.

6. ———: ———: **Power to Restrain by Injunction.** Whether or not an alleged conspiracy formed between the supervisors after the district has been organized, to locate the drainage canal in a way to benefit most largely their own lands to the injury of others, will authorize a decree enjoining the construction and maintenance of the ditch, will not be decided where the evidence affirmatively shows that such conspiracy, if it ever existed, was barren of results. But it would seem that Secs. 5514, 5515, 5518a, R. S. 1909, make it unnecessary to resort to the extraordinary remedy by injunction, though that is not decided.

Appeal from Knox Circuit Court.—*Hon. Charles D. Stewart*, Judge.

AFFIRMED.

*J. C. Dorian* and *J. A. Whiteside* for appellants.

The board of supervisors alone has power to locate the ditch. R. S. 1909, sec. 5512. But the board

of supervisors has no right to so locate the ditch that the actual damages will be maximized and the actual benefits minimized to the extent of making the actual damages exceed the actual benefits. Laws 1911, p. 212, sec. 5518a. True this section furnishes a remedy where the estimated cost exceeds the benefits. But in this case appellants alleged and offered to prove that the estimate was false and fraudulent and that the item of the construction of the ditch would alone cost half as much again as it was estimated to cost; and where it is apparent and can readily be shown that the cost will exceed the benefits, the many trials, in this case about forty, of exceptions to assessments of damages and benefits are expensive and useless trials. The estimated cost would not be found to be inadequate until the work had progressed, irreparable damage done, and surely, then, there would be no adequate remedy. If the work was left unfinished great damage would be done. If it was finished it would have to be done by levying assessments in excess of the benefits, which the law does not warrant. Such a proceeding would be confiscatory, which is not authorized under any law of the land. The only adequate remedy is to restrain them, and that is the proper remedy. Sears v. Hatchkiss, 25 Conn. 171; Zable v. Harshman, 68 Mich. 270; Mayor v. Meserole, 26 Wend. 140; Wright v. Shanhan, 16 N. Y. Supp. 785; Realty Co. v. Haller, 128 Mo. App. 66; Williams v. Harrison, 135 Mo. App. 152; Hartwell v. Armstrong, 19 Barb. (N. Y.) 166; Winkleman v. Drainage Dist., 170 Ill. 37; Brush v. Carbondale, 78 Ill. 74; Mt. Carmel v. Shaw, 155 Ill. 37; Railroad v. Drainage Dist., 129 Ill. 417; Bridge v. Drainage Dist., 140 Ill. 53; People ex rel. v. Myers, 124 Ill. 95; Hosmer v. Drainage Dist., 135 Ill. 51; School Dist. v. Young, 152 Mo. App. 304. If the allegations of the petition which were stricken out by the court are true, and the proof offered by plaintiffs could have been made, then the defendants are guilty of misfeasance,

are violating the plain and manifest intent of the statute under which they are acting and are not proceeding in good faith, and the court should have heard the proof and granted the relief sought. What appellants alleged and offered to prove would have made a case such as entitled them to the relief sought. This conduct of the board will, if allowed to continue, bankrupt the district and the improvements will be a detriment to the district, and not a benefit as intended by the statute, and appellants and other landowners of the district will be required to expend a large sum of money for work which will be of no benefit, but an injury to them. If the board cannot be restrained, appellants and other landowners of the district are, truly, at the mercy of the board. Their holding of office will continue until they have carried out their plans. No election can be held without their calling it, and it is fair to presume that none will be held, until they have carried out their plans, judging the future by the past.

*F. H. McCullough* and *W. T. Rutherford* for respondents.

(1) All motions which have formed a basis of exceptions must be set out in the bill of exceptions, or where it appears in the record proper (as here) a call must be made in the bill for the motion itself. Martin v. Est. of Nichols, 63 Mo. App. 346; Pearson v. O'Connor, 151 Mo. App. 171; Dienen v. Pub. Co., 232 Mo. 425; Ashton v. Penfield, 233 Mo. 419; Shohoney v. Railroad, 231 Mo. 142. (2) Matter in a pleading that does not state a caues of action or defense is open to a motion to strike out as well as to a demurrer. Shohoney v. Railroad, 231 Mo. 148; Sapington v. Jeffries, 15 Mo. 631; Niedelet v. Wales, 16 Mo. 215; Bailey v. Cannon, 17 Mo. 597; Robinson v. Lawson, 26 Mo. 71; Ming v. Suggett, 34 Mo. 365; Howell v. Stewart,

54 Mo. 407. (3) When a motion is to all intents and purposes a demurrer dispositive of the whole case on a matter of law, the rules relating to a demurrer may then be applied to such a motion. Shohoney v. Railroad, 231 Mo. 149; Austin v. Lohring, 63 Mo. 21; O'Connor v. Koch, 56 Mo. 258. (4) Where a new right or means of acquiring it is given, and an adequate remedy for violating it is given, in the same statute, then the injured parties are restricted to the statutory remedy. Hickman v. Kansas City, 120 Mo. 110; State v. Bittinger, 55 Mo. 596; Baker v. Railroad, 36 Mo. 543; Soulard v. St. Louis, 36 Mo. 546; Leary v. Railroad, 38 Mo. 486; Railroad v. Bebout, 15 Am. & Eng. Ann. Cases, 1145, and notes on page 1150. (5) The rule is that an injunction will not be granted where there is an adequate remedy at law. 22 Cyc. 769; Planet Co. v. Railroad, 115 Mo. 613; McKee v. Allen, 204 Mo. 674. (6) An injunction is a matter of grace, and not of right. Johnson v. Railroad, 227 Mo. 450; 22 Cyc. 746, 749. (7) Plaintiffs have an adequate remedy provided by statute for such injury and damages as they or any of them may sustain. Secs. 5517, 5518, R. S. 1909; Sec. 5518a, Laws 1911, p. 213; Secs. 15, 16, 29, 36, Laws 1913, pp. 240, 241, 250, 253; Drainage Dist. v. Richardson, 237 Mo. 49; Railroad v. Drainage Dist., 237 Mo. 86; Laws 1913, pp. 233-267.

FARIS, J.—Injunction suit by Calvin Carder and twelve other taxpayers and owners of real estate in defendant drainage district, against the said district (called hereinafter for brevity, the district), and D. A. Frazee and three others as supervisors thereof. Object of the action is to enjoin defendants from constructing and maintaining its drainage ditch as proposed in the plan of drainage filed and adopted. Plaintiffs on a hearing upon the merits were cast and have appealed so far as we note, duly.

For a better understanding of the case and to better illustrate an alleged error based on the action of the court *nisi* in striking out a part of plaintiffs' petition, we copy same below, caption, descriptions of land and alleged proper and improper ditch routes, verification and formal parts, omitted:

"Plaintiffs state that Fabius River Drainage District No. 3 is a drainage corporation, organized and existing under and by virtue of the laws of the State of Missouri.

"That defendants D. A. Frazee, J. S. Barr, Geo. H. Walker and S. R. Short are members of the board of supervisors of defendant district.

"That plaintiffs are the owners of real estate in the counties of Knox and Clark, in the State of Missouri, the same being within the limits and boundary lines of said drainage district and a part thereof, and said lands being as follows:"

[Here follow descriptions of the lands of plaintiffs.]

"That the board of supervisors of this district has filed, according to law, the plan for drainage, including within its scope the proposed location of the main ditch and topographical survey, the location of said ditch being as follows:"

[Here follows proposed route of ditch as the filed "plan for drainage" locates it.]

[a]  "That the topographical survey shows by the elevations and depressions of the land that the location of the proposed ditch embraced in said plan for drainage is impractical and will result in no benefit, but will result in detriment to said drainage district, and will work irreparable damage to plaintiffs; that said ditch, if located as proposed in said plan for drainage, will not carry off the surplus overflow water, which will collect and stand on plaintiffs' lands; that ditch, if so located, will be on higher ground than the lands of plaintiffs and other lands in said district; will cross the old

creek or river many times, which will cause said creek or river to close up and cease to flow, and by destroying the outlet, the overflow and surplus water will collect on the lands of plaintiffs and leaving to plaintiffs no outlet for said water in lieu thereof.

"That when the old creek or river is closed up, as it will be if said ditch is located as proposed in said plan for drainage, there will be no outlet for the waters of Long Branch, Betram Branch, Vernon Branch and other streams which come into the creek or river from the south, thereby causing the waters from said streams to overflow and remain on the lands of the landowners in said district and those of plaintiffs.

"That said ditch, if so located, will be much more expensive to construct and will cause the damage to plaintiffs' and other lands in said district to be much greater than if said ditch was properly located as aforesaid.

"That there will be no benefits accrue to plaintiffs' or other landowners in said district; it will render worthless much of the lands of plaintiffs and will be a detriment and damage to the lands of plaintiffs and not a benefit.

"That said topographical survey shows that the proper location for said ditch would be as follows:"

[Here follow plaintiffs' personal views of the proper route for the proposed ditch.]

"That if said ditch is located as last above described, it will be the more practical and beneficial location, and be of the most benefit to said district and to plaintiffs and will benefit the landowners in said district and plaintiffs far in excess of the damages and cost of construction; that the benefits will be greater, the damages less and the cost of construction much less, so that the ditch will be a benefit to the district, and the benefits will exceed the damages.

"Plaintiffs state that if said ditch is located as proposed in said plan for drainage, irreparable dam-

age will be done plaintiffs, as above set forth, and the expenses, damages and cost of constructing said plan for drainage will exceed the benefits derived therefrom and will cause said district to become insolvent and unable to meet its liabilities. [b]·

"Plaintiffs further state that when the petition for the organization of said district was circulated, it was fraudulently represented to the plaintiffs that the ditch would be located on low grounds, on a route similar to the one hereinbefore described as the most practical, beneficial and proper route, where it would be the most benefit and the least damage to plaintiffs and to the district, where the cost of construction of the ditch, it was represented, would not exceed seven cents per yard; that plaintiffs signed said petition relying upon said false and fraudulent statements made to them, and believing the same to be true; that after the said district was organized and defendants D. A. Frazee, J. S. Barr, George Walker and S. R. Short were elected on the board of supervisors, the said defendants fraudulently conspired with each other to locate the ditch where they thought it would be most beneficial to themselves, without regard to the interests of the plaintiffs and the rest of the landowners in said district, and by so conspiring together, did locate the ditch where the same, in their opinion, would be most beneficial to themselves, regardless of the interests of the plaintiffs and the other landowners in the district, and that said ditch, as located by them, by fraudulently conspiring together as aforesaid, is against the interests of plaintiffs and the other landowners of said district, will cause the said ditch to be a damage and not a benefit to plaintiffs and the landowners of said district, will cause the damage to exceed the benefits, thereby rendering the district insolvent and unable to pay its liabilities and will do to the lands of the plaintiffs great and irreparable damage, for which they would have no adequate remedy at law.

"Wherefore, plaintiffs pray the court to enjoin the defendants from constructing and maintaining the said ditch as proposed in said plan for drainage."

Defendants moved to strike out all that part of plaintiffs' petition which we may aptly designate as being included between [a] and [b] marked on the above petition, for the reasons: (a) that it failed to state facts which constitute a cause of action against defendants; (b) that there is no equity stated in the part asked to be stricken from the petition, and (c) that plaintiffs have an adequate remedy at law for all of the matters set out in the said part of the petition.

The court sustained the motion to strike out the portion of plaintiffs' petition above indicated, but no exception was properly saved by plaintiffs to this action.

Defendants' answer was a general denial. The case was tried by the court upon the issues of fraud remaining in plaintiffs' petition, and judgment rendered for defendants dismissing plaintiffs' bill.

The facts shown upon the trial of the case, as we have with much difficulty gathered them from a meager and most unsatisfactory record, are substantially that defendant district is organized under the provisions of article 1 of chapter 41 of the Revised Statutes of 1909, as amended by the Act of 1911; that plaintiff Calvin Carder, and defendants D. A. Frazee, J. S. Barr, George H. Walker and S. R. Short compose the board of supervisors of said district, and that plaintiffs are taxpayers therein, owning altogether some 1300 acres of land in the district, which will be affected for good or ill by the proposed improvement. Upon the filing by the engineer of the district of his proposed plan of drainage therefor, divers objections to the whole and to parts of it having to do with the location of the main ditch, and having their foundation in the respective personal interests of the super-

visors, were urged against it.  In fact, to state it in
the ingenuous language of some of the witnesses, the
supervisors "fell out."  Oil upon the troubled waters
took the form of an informal agreement, likewise in-
genuously and mayhap sarcastically referred to by
counsel as a "gentleman's agreement," pursuant to
which two other civil engineers were to be selected,
who were to go over the proposed ditch locations and
with the engineer of the district, one Weigner (or
Weiner, it repeatedly occurs both ways in the rec-
ord), were to decide which location of some three pro-
posed and disputed ones should be adopted.  These en-
gineers accordingly went over the district, reported
unanimously in favor of said engineer Weigner's lo-
cation of the ditch and plan of drainage, and the dis-
trict approved and adopted the same, plaintiff Carder
inferably dissenting, though of a formal dissent the
record is silent.

Other facts will become pertinent during the dis-
cussion of the points mooted, but all such can with
better understanding be set out in the opinion in con-
nection with the points up for ruling.

I.  Plaintiffs complain that the court erred in
striking out of their petition the portion thereof in-
dicated in our statement of facts.  We need not discuss
the merits of this contention, since it has not been pre-
served for our review as required by law;
no exceptions to the act of the court hav-
ing been preserved in the bill of excep-
tions, the place wherein such matter ought to be.  When
the whole of a pleading is stricken out on motion, there
has, it is true, grown up a practice, not legally allow-
able, but tolerated, to permit such motion to stand in
lieu of a demurrer, which latter, as is well-known and
well-settled, preserves itself for review as a part of
the record proper.  But that was not the case here.
Only a part of the petition of plaintiffs was stricken

Motion to
Strike Out.

out by this motion; the court's action thereon leaving one ground of relief still in the petition. In such case the authorities all hold that the matters complained of are not in the record unless made so by incorporating them in a bill of exceptions. [Parkyne v. Churchill, 246 Mo. 109; Shohoney v. Railroad, 231 Mo. l. c. 142; Ewing v. Vernon Co., 216 Mo. l. c. 686; Paving Co. v. Benz, 81 Mo. App. l. c. 248.]

II. It is contended that the court erred in finding the issues for the defendants and in dismissing the plaintiffs' bill. This is a very comprehensive contention, to be resolved by a consideration of the whole of the competent evidence in the case, since the action sounds in equity. Let us look to this.

Drainage District: Fraud in Locating Canal: Cost of Construction.

The gravamen of the charge left in the petition after a part thereof was stricken out, is fraud. This fraud, according to the petition, consisted in certain alleged false representations made by defendants Short and Frazee while they were circulating for signatures of landowners the petition for the incorporation of the district, to the effect (a) that the work of draining the lands in the district would cost only seven cents per cubic yard of earth excavation; (b) that the main drainage ditch or canal would be located on low ground, and (c) that the defendants Barr, Frazee, Short and Walker as supervisors of the district, conspired together to locate the ditch at an unfit location, beneficial only to said defendants and in entire disregard of the interests of the district and of the taxpayers thereof and of these plaintiffs.

It is clear from the allegations of the petition that the alleged false and fraudulent misrepresentations touching cost and location of the ditch, were made by defendants Short and Frazee before the incorporation of the district and while the proposed articles of association for its incorporation were being signed by

the petitioning landowners. [Sec. 5496, R. S. 1909.]
It is utterly idle to urge that a proposed work of much-
needed drainage can be halted by an injunction for
such a reason. At the time of the making of the alleged
representations neither Short nor Frazee was a mem-
ber of the board of supervisors, nor could there have
been at such time, regard being had to the statute con-
trolling, any reasonable assurance or expectation that
they ever would be.

Defendant district was organized under the pro-
visions of article 1 of chapter 41 of the Revised Stat-
utes of 1909, as amended by the Legislature in 1911.
[Laws 1911, pp. 206 *et seq.*] We need not use up space
in setting out all of the several numerous sections of
this law either in full or in substance. They are found
in the statutes and in the session acts; the curious may
read them there. Briefly we shall refer to some of
them as they applied when this district was organized,
and as they read prior to the repeal thereof, and the
re-enactment of an entirely new article by the 47th
General Assembly. [Laws 1913, pp. 232 *et seq.*] Ex-
tended comment would but tend to confuse, regard
being had to the many changes made in these statutes
in 1913, though we bear in mind the provision in the re-
enactment of 1913 that at the election of the super-
visors, the remedies provided are cumulative. [Sec.
62, p. 266, Laws 1913.]

Section 5496 provided that upon the signing, by
the owners of a majority of the acreage of a contiguous
body of swamp land situate in one or more counties, of
articles of association, containing certain allegations,
not here pertinent, praying for incorporation as a
drainage district, the same shall be filed in the office of
the clerk of the circuit court of the county containing
the greater area of such swamp land.

Section 5497 provides that thereupon the said
clerk of the circuit court shall issue summonses to all
owners of land in the proposed district, except those

who have signed said articles of association. These summonses are issued as now provided by law and are served as summonses are served in civil cases. Nonresidents may be notified by publication.

Section 5499 provides for the filing of objections in the circuit court at the return term (Sec. 5498, R. S. 1909) by any nonsigner who has been summoned or notified; which objections are limited by this section "to a denial of the statements in the articles of association." These objections having been tried summarily by the court, the court (only, if he shall of course overrule all objections) by an order duly entered of record, thereupon adjudges the proposed district to be a public corporation (*conditionally* in the sense to which we shall later refer). [Sec. 5518a.]

Section 5507 provides for the calling, by the clerk of the circuit court in which the drainage district is incorporated, and for the holding, of an election by the landowners of a board of five supervisors, who hold such office (as they subsequently determine by lot) for one, two, three, four and five years respectively, and until their successors are elected and qualified.

Section 5511 provides for a "board of engineers" to be appointed by and with the approval of the board of supervisors, whose duty it is, after making surveys, both plane and topographical, to prepare and submit to the said board of supervisors "a complete plan for draining and reclaiming the lands in said district" from overflows and floods.

Section 5512 provides for the filing of the final report and plan of reclamation of the board of engineers, with the board of supervisors, and for the adoption of such report and plan by the said board of supervisors, after consultation, informally, with the engineers and with such others who may be sufficiently interested as to be present. After the adoption of such report and plan by the supervisors, it becomes the official "plan for drainage" of the district.

The record in this case shows that all of these things were done substantially as the statute requires, as shown by the epitome of the steps provided for by statute, as we set it out. The petition solemnly admits that "the plan for drainage was filed according to law." We are asked, nevertheless, to enjoin the district from digging the ditch where the plan of the board of engineers, which was lawfully adopted by the board of supervisors, fixed and located it, for the alleged reason that when the signatures to the articles of association were being gotten (section 5496, supra) by defendants Short and Frazee (who happened afterward to be elected two of the supervisors) the said Short and Frazee fraudulently misrepresented the cost of the proposed work, and also the location of the ditch, by promising that it should be located, as the testimony of the witnesses indefinitely expresses it, on "low ground." We might leave this contention where the learned trial judge left it, on the ground that the evidence adduced by plaintiffs does not sustain or even tend to sustain their contention. But the question of whether a drainage district can be thus blocked and practically destroyed by adventitious facts such as are here complained of—by loose and untruthful statements of the circulators for signatures of the articles of association—is well lodged in the case and ought to be ruled on. We do not think it can be. The whole trend of the statutory procedure and all of the safeguards of judicial judgments and decrees provided by law and above referred to, as likewise others below referred to, would seem to forbid any such view. The circuit court in which the proceeding is begun and by which it is in the end incorporated and at last adjudged, judicially determines whether the cost of the proposed improvement is out of proportion to the benefits accruing both as to the whole district and in severalty as to the parcels of land in the district. If he determines that the estimated cost of the improve-

ment required to reclaim the land exceeds the benefits, he disapproves the report of the commissioners (appointed to determine the question of damages and benefits, sec. 5514), and thereupon the incorporation is dissolved (Sec. 5518a); the thing we held in mind when it was said supra, that the decree incorporating a drainage district is a *conditional* one—the condition being that it shall in the end be judicially determined that the benefits of the proposed improvement shall at least equal the cost thereof. The petitioning landowners, as all of plaintiffs were, sign the articles of association for incorporation, not in ignorance, but with full knowledge impliedly, of the statutes and procedure under which such a drainage district as this is begun and moves and has its being.

It is not a question of total cost, or cost per cubic yard of excavation which is held in mind, or ruled in the organizing court's judgment, but the proportion which such cost, whether upon a cubic yard, acreage or other basis, bears to the amount of the benefits accruing. Therefore testimony with which—and only with which—this record is filled, to-wit, that the work would (as the alleged fraudulent representations put it) cost but from two to six dollars per acre, and the excavation of the ditch but seven cents per yard, is worse than idle.

It would be against public policy to permit important matters like the organization of great (or even small) drainage districts, which are corporations and political subdivisions of the State (Morrison v. Morey, 146 Mo. 543) to be imperilled or likely to be uterly destroyed, after years of labor in organization, by the mere argumentative and guessing estimate of him who carried about the proposed articles of association for the purpose of having same signed by the petitioning landowners. The signers of the articles, as we have said before, sign with the full knowledge imputed to them of the statutes and legal procedure and final

court judgment which make the work, and the prorating of the assessment and levy of the money to pay for it, a finality.    Even if (though the view is plausible) the circulator of such proposed articles of incorporation be not acting as the agent of all who sign rather than as the agent of a district not yet organized and which may never be organized, or which being organized (conditionally) may be by decree of court dissolved, is it either wise, or good law or a matter of safe and sane policy to so imperil a drainage district because of loose puffing and a mere known and palpable guess?    Other reasons might be given, but to my mind the matter cannot be made clearer by discussion.    We apprehend that learned counsel have been misled by the rule which applies to promoters of private corporations.    This contention is disallowed.

III.    If alleged misrepresentations made before the conditional organization of a district by those who later accidentally, in a way, become supervisors, cannot constitute such fraud as will destroy the district, will an alleged conspiracy, on the part of the supervisors *after* the conditional, but *before* the final organization of the district, to locate the ditch so as to favor their own interests without regard to the interests of the district and of other landowners, have this effect?

This is a large and comprehensive question, which we are happily saved from either considering on the cold law or from answering; since there is no proof in the record of any such conspiracy, neither is such a conspiracy to be inferred from the evidence.    On the contrary the testimony offered by plaintiffs shows affirmatively and that of defendants likewise, that neither defendant Barr nor Walker got the ditch located where they desired it to be.    These two defendants, with the plaintiff Carder, constitute a majority of the board of supervisors, and it is patent that if there was a conspiracy formed it was barren in producing the result

charged in the petition of plaintiffs herein, namely, that defendants located the ditch to favor their own interests in utter disregard of the interests of plaintiffs and of the district itself. A mere barren and abandoned conspiracy sounding in words but jejune of acts or results, is not actionable, absent a statute so declaring. [Hunt v. Simonds, 19 Mo. l. c. 588; Darrow v. Briggs, 261 Mo. 244.] Moreover, there is no proof that the interests of the district have been disregarded or that the ditch has not been located at the best and most advantageous place possible. There are to be found in the testimony loose and indefinite statements that the ditch was agreed to be located on "low ground," "away from the creek," and that the location approved by the majority of the defendant supervisors was on high ground and along, near to and in places partly in the said creek. But there is not a word from any witness who knows or who pretends to know, or from any expert (and certainly no proof by actual physical demonstration, for the ditch has not yet been constructed) that it is not located at the very best place possible for it to be in order to do the work of drainage and reclamation in the best and most competent manner. On the contrary, the plaintiffs offered the report of the board of engineers in which it was iterated and reiterated, both affirmatively and by repeated inference, that the location attacked here by plaintiffs, is the very best to be found. So upon the facts we think the court *nisi* was correct in his findings on this phase of the case and on the whole case.

We need not therefore carefully examine whether section 5518 precludes a suit in equity of this sort when it affords full and ample remedies by providing that any owner of land, upon the coming in of the report of the commissioners, who are appointed by the circuit court to assess damages and benefits (Secs. 5514 and 5515, R. S. 1909) may file exceptions thereto "to any assessment for either benefits or damages," and

which exceptions are required to be heard by the court summarily and to be so determined as to carry out liberally the purposes and needs of the district. And furthermore, that if the court find that any lands included in the district will not be benefited by the improvement proposed in the plan adopted, he is required to strike out such lands from the district and order that they be no longer taxed, and that he may, all exceptions having been determined, amend and modify, and thereupon approve and confirm, the report; but if on the contrary, following the provisions of section 5518a (mentioned and discussed, supra, in another connection), the court finds the estimated cost of the proposed improvement to exceed the benefits, his bounden duty is to disapprove the report, and *ipso facto,* upon the settlement of the costs, the district becomes dissolved. These considerations would seem to render unnecessary a resort to the extraordinary remedy by injunction; but for lack of proof, we suggest it without finding ourselves forced to decide it now, nor till a case shall arise wherein the facts shown lodge it firmly. Doubtless a condition might arise under our statute, (Sec. 2534, R. S. 1909) or even under the ancient equity jurisdiction, which would call for the restraint by injunction of a board of supervisors; if for illustration, after the day for a hearing and relief pursuant to statute had passed, such board were proceeding in violation of law, or in bad faith, to the damage of the district, or of the taxpayers having lands therein. But such a condition is not now before us.

Other points as to the admission and rejection of evidence are raised, but they are either not borne out by the record or would not affect the result if they were so borne out. It follows that the case should be affirmed. Let this be done. All concur.