IN RE MINGO DRAINAGE DISTRICT. In the Matter of the Articles of Association and Petition of GEORGE S. DEAN et al. for the Incorporation of MINGO DRAINAGE DISTRICT v. B. F. WILSON et al., Appellants.

**In Banc, March 1, 1916.**

1. **DRAINAGE DISTRICT: Construction of Statutes.** Drainage and reclamation statutes are to be liberally construed.

2. —————: **Objections.** Objections to the organization of the proposed drainage district, timely filed by any person other than the signers of the proposed articles, inure to the benefit of all non-signing owners of property liable to taxation in the proposed district.

3. —————: **Ownership of Land: How Shown.** The matter of title of lands within the proposed drainage district is only incidental, and only a prima-facie showing of ownership is required, where no attempt is made to show that the signers of the articles are not owners. The law does not require proof of ownership to be made by deraignment from the Government down to the present owners, by offering muniments of title or certified copies thereof; secondary evidence of any kind that establishes a prima-facie ownership is sufficient for the purposes of incorporation to constitute the signer of the articles an owner, in the absence of proof to the contrary.

4. —————: —————: **Specific Objection: Should Be Pleaded.** If certain persons who are not owners of land sign the articles of incorporation for some fraudulent or ulterior motive, the objectors should deny by name that they are owners and upon the hearing break down by evidence their prima-facie showing of ownership; or, at least, deny generally that divers persons who signed the petition were competent signers or owners of land, and destroy the prima-facie case by proof.

5. —————: **Inclusion of Hills.** The inclusion of hills and other high lands which do not overflow within the drainage district does not necessarily render the incorporation invalid. If such lands are not benefited and only by their inclusion a competent number of petitioners is obtained, that would have the effect to oust jurisdiction; but it may well be that that drainage of wet, low or swamp lands lying around and about will so far benefit hills and other high land in matters of sanitation and easier egress and ingress as to render it entirely equitable that they should bear a modicum of the cost of draining the low land.

6. ———: **Petitioner: President of Corporation.** An objection, made only by other landowners, that the president of a corporation owning land in the proposed district had no authority, in the name of the company, to sign the articles of incorporation without being specifically authorized to do so by the board of directors or by a vote of its stockholders, is not allowed.

7. ———: ———: **Attorney in Fact.** Likewise, an objection by other landowners only, that a certain person who held a power of attorney to act generally for a corporation which owned certain lands in the proposed district had no authority to sign the articles, is disallowed.

8. ———: ———: **Holder of Deed in Escrow.** And an objection by the owners of other land only that a certain person who had contracted to buy the land for which he signed the name of the then apparent owner, was not authorized to sign the articles, is disallowed, the fact being that the deed to him was then actually executed and lying in escrow and before the hearing was taken down by him and recorded.

9. ———: **Title of Case.** Prior to a final judgment incorporating a drainage district the title of the case on appeal should run thus: "In re Petition for Incorporation of Mingo Drainage District; George S. Dean et al., Petitioners, Respondents, v. B. F. Wilson et al., Appellants."

10. ———: ———: **Right to Sue.** After the decree incorporating a drainage district has been made final it can sue and be sued in its own corporate name.

Appeal from Stoddard Circuit Court.—*Hon. W. S. C. Walker,* Judge.

AFFIRMED.

*Brown, Pradt & Genrich* and *V. V. Ing* for appellants.

No persons but those who are owners of swamp, wet or overflowed lands or lands subject to overflow are qualified signers and petitioners in a proceeding to organize and incorporate a drainage district. Laws 1913, p. 233, sec. 2. The acreage majority must be swamp, wet or overflowed lands or lands subject to overflow, and such land must lie in a contiguous body.

Laws 1913, p. 233, sec. 2. Owners of real estate in the sense in which the term "owners" is used in the act under which this proceeding is prosecuted, are the owners of the freehold estate as appears by the deed record. Laws 1913, p. 253, sec. 39. A freehold estate in lands is an estate vested and cannot be established by oral statements of witnesses. Turner v. Williams, 76 Mo. 617. The deed record is the best evidence of the ownership of the lands in the drainage district. Laws 1913, sec. 39, p. 253. Where the best evidence is available it must be used. Secs. 2818, 2819, R. S. 1909. The second best evidence (a copy of the conveyance or a copy of the record) is not admissible unless such copy is under the oath of some person knowing the requisite facts, or the certificate of the recorder under his official seal. Sec. 2819, R. S. 1909. All of the testimony of witnesses as to what they say they found relative to the ownership of the lands in the drainage district, and their opinions relative thereto, by examination of the abstract books of Weber Abstract, Land & Loan Company concerning lands in Stoddard County, was improperly admitted, because the abstract books themselves could not have been admitted in evidence (if they had been offered, which was not done) because there was no evidence whatever as to the correctness of the abstract books by persons who knew. Einstein v. Land & Lumber Co., 118 Mo. App. 184. In the second place, it was improper for the court to admit as evidence of ownership the oral testimony of witnesses as to what they understood the deed records and indexes of deed records to show, concerning the question as to who were the owners of the lands in the drainage district. The question of ownership is a question of law, for the court to pass on, and not to be decided by the testimony of witnesses. Brown v. Railway Co., 101 Mo. 484; Land Co. v. Thompson, 157 Mo. 647; Whittlesey v. Kellogg, 28 Mo. 404; Milan v. Pemberton, 12 Mo.

598. The custodian of the record, in this case, the recorder of deeds, is the only person who may testify as to what the records in his office show or do not show, and this rule applies in all cases where the ownership of real estate is involved. Sec. 2819, R. S. 1909. Even records other than the records of the conveyances of real estate are subject to the rule that no person except the custodian thereof may give oral testimony of its contents. Blodgett v. Schaffer, 94 Mo. 652; Martin v. Brand, 182 Mo. 116. The best evidence available to the party offering evidence must be offered. Montgomery v. Dormer, 181 Mo. 5. The deed records of Stoddard County were all in the office of the recorder of that county at the time of the trial, and no offer of any of these records as evidence in this case was made.

*Wammack & Welborn* and *J. F. Meador* for respondents.

The court might very well require some showing by the petitioners as to the ownership of the land—a sufficient showing to induce the court to see that it is not being imposed upon, but in the absence of any showing whatever on behalf of the objectors (and there is no such showing in this case) the objectors would have no right to demand anything more than the showing made by the articles themselves and would not be in a position to question the character of evidence by which such showing was made. Birmingham Drainage District v. Railroad, 178 S. W. 897; Little River Drainage District v. Railroad, 236 Mo. 94.

FARIS, J.—This is an appeal from a proceeding in the circuit court of Stoddard County for the incorporation of a drainage district under the provisions of the Act of March 24, 1913. [Laws 1913, p. 232 et seq.] Upon a hearing on the question of entering a *pro forma* decree of incorporation and from a judgment decreeing incorporation, appellants here, who are some of the objectors below, have appealed.

The questions which are involved turn upon the objections filed by appellants and others who were not signers of the proposed articles of incorporation. Except for the alleged errors in the admission of evidence upon the hearing of the case and which are specifically set forth in the opinion, a full understanding of the points of contention may be had from the objections filed by appellants. These objections, caption, merely formal parts and the names of the objectors other than these appellants, omitted, are as follows, so far as they are pertinent:

"Now come B. F. Wilson, C. S. Gilbert, L. A. Pradt, Neal Brown [and eighteen other named persons] and state that they are the owners of the lands and real estate which it is alleged that they own in the articles of association, made and executed by George S. Dean, Robert H. Bailey, Timothy T. Beach and others asking and praying that the lands and other property therein described be organized and incorporated as a drainage district to be named Mingo Drainage District, and filed in the office of the clerk of this court in vacation of the court.

"These objectors, B. F. Wilson, C. S. Gilbert, L. A. Pradt, Neal Brown [and eighteen other named persons] further state that they did not sign the articles of association herein.

"The said B. F. Wilson, C. S. Gilbert, L. A. Pradt, Neal Brown [and eighteen other named persons] come now into court here for the purpose of objecting, most respectfully to the incorporation of the said proposed Mingo Drainage District under the said articles of association filed in this court, and do object most earnestly and sincerely to the organization and incorporation of said Mingo Drainage District for the following reasons, to-wit:

"1st. For the reason that the drainage and reclamation of the lands and other property in said proposed district from the effects of water, which is

contemplated if said Mingo Drainage District be organized and incorporated, is not practical or feasible, even if the same be possible.

"2nd. For the reason that the effects of the water upon the lands and other property within the said proposed district are not so injurious as to justify imposing the burdens and costs and expenses upon the owners of the lands and property in the district for the purpose of draining the said lands.

"3rd. For the reason that the drainage of the said lands is impracticable for want or lack of sufficient fall or slope in the land to carry off the water that accumulates thereon by rainfall and natural flowage.

"4th. For the reason that there is not sufficient outlet or channel or other body of water into which the water may be drained off the lands in the proposed district, nor any way of draining it off without throwing it onto other lands of great value, thereby entailing great damage to such other lands and placing heavy burdens of taxation on the lands in the said district to pay the same.

"5th. For the reason that there are many acres of lands in said proposed district that would not in any way be benefited by the drainage of the swamp and overflowed lands therein.

"6th. For the reason that there are many acres of lands in said proposed district that are not swamp, nor overflowed land, nor subject to overflow by water.

"7th. For the reason that the burden of taxation upon the lands in the proposed district would, necessarily, be so great that the making of the improvements contemplated, and draining the lands in the district would be out of reason and proportion to the benefits that would result therefrom to the property in said drainage district.

"8th. For the reason that there are now in process of drainage and reclamation about 5,000,000 [sic] acres

267 Mo. 18

of swamp, wet and overflowed lands and lands subject to overflow in the Little River Drainage District immediately north and east of the proposed Mingo Drainage District, which project, if practicable and consummated, will reclaim and throw upon the market, no doubt, many thousands of acres of land and open up to use many thousands of acres of land, if the project of drainage is practicable and feasible, which will render the present drainage and reclamation of the lands in the proposed Mingo Drainage District impracticable, for the reason that there will be no demand nor necessity for the reclamation of said lands at the present time and for several years; and, if said lands in said Little River Drainage District be not reclaimed and made useful for agricultural purposes and other purposes, then that fact will demonstrate the impracticability of the reclamation of the swamp, wet and overflowed lands in the proposed Mingo Drainage District, hence it is best and most judicious to await the result of the efforts at the reclamation of the lands in the Little River Drainage District before proceeding to the organization and incorporation of the proposed Mingo Drainage District, which, if organized and incorporated, will entail large and burdensome expenses and costs on the owners of the property in said district, even if it should be demonstrated later that the project is impracticable.

"9th.   For the reason that there is no demand or necessity for the drainage of the lands in the proposed Mingo Drainage District at the present time that justifies the organization and incorporation of the district. . . .

"11th.  For the reason that the owners of a majority of the acreage of the lands in said proposed Mingo Drainage District have not signed said articles of association.

"12th.  For the reason that the owners of a majority of the acreage of the swamp, wet and overflowed

lands and lands subject to overflow by water have not signed said articles of association.

"13th. For the reason that the owners of a majority of the acreage of the swamp, wet and overflowed lands and lands subject to overflow by water in a contiguous body have not signed the said articles of association.

"14th. For the reason that the lands and other property in said proposed drainage district owned by each person who owns land and property therein are not described as belonging to the respective owners thereof and the name and post-office addresses of each owner given in said articles of association.

"15th. For the reason that the names of the individual owners of lands and other property in said proposed Mingo Drainage District is not given and the lands and other property owned by each is not described in the said articles of association.

"16th. For the reason that there are swamp, wet and overflowed lands and lands subject to overflow by water in the said proposed Mingo Drainage District which are not described in said articles of association.

"17th. For the reason that much of the lands described in said articles of association filed herein are not swamp, wet or overflowed lands, nor lands subject to overflow.

"18th. For the reason that there are persons who own lands in said proposed drainage district whose names are known by the persons who signed said articles of association, or by some of such signers, and whose names are not stated in said articles of association. . . .

"23rd. For the reason that many of the persons whose names appear as signers to the articles of association did not, in fact, sign said articles of association and did not authorize their respective names to be signed thereto.

"24th. For the reason that many of the persons whose names appear as signers to said articles of association do not own any lands or other property within said Mingo Drainage District.

"25th. For the reason that said articles of association contain no description of any property other than lands, and there is no allegation that there are any other kinds of property in said drainage district other than real estate and lands, and no allegation that the owner or owners of any kind of property in said district than lands, have or has signed said articles of association, and no allegation that there are no .other kinds of property in said district other than lands.

"26th. For the reason that the lands belonging to these objectors within said proposed drainage district would not be benefited by the drainage and alleged improvements contemplated by the petitioners as disclosed by said articles of incorporation, but on the contrary, would thereby be greatly injured and damaged.

"These objectors to the organization and incorporation of the said Mingo Drainage District earnestly object to the organization and incorporation of said Drainage District for the above and foregoing reasons, and they respectfully ask the court to find and to adjudge and decree that the lands described in said articles of association be not organized and incorporated as a drainage district, and to render its order, judgment and decree dismissing said articles of association and said drainage proceedings, and to adjudge the costs of this proceeding against the said signers of said articles of association according to law, and that these objectors recover of and from the said signers to said articles of association their costs and expenses in this behalf expended, and that they have execution therefor, and that they be permitted to go hence without day."

## OPINION.

I. Objectors raised *nisi* twenty-six alleged reasons why the Mingo Drainage District should not be incorporated. Many of these were premature and could not have been considered by the court *nisi* at this incorporating stage of this proceeding. For many, if not the majority of the twenty-six points mooted, will save themselves till the report of the viewers and engineers comes in, should that stage ever be reached. Such of the points as were timely, but not prematurely raised, are here for review as questions of fact or as alleged errors of the court below, in admitting evidence. Some of these timely mooted points have apparently been waived, since no steps to review them are taken here. So, three points only confront us: (a) That the court *nisi* allowed, over appellant's objections, the ownership of the lands in the proposed district to be proved by secondary evidence, instead of requiring such proof of ownership to be made by deraignment from the Government down to the present owners, by offering in proof the best evidence, to-wit, original muniments of title, or certified copies thereof, upon a proper foundation laid; (b) that there are unlawfully included within the limits of the proposed district certain lands which are not swamp, but high and hilly; and (c) that certain persons, to-wit, Collins, Shantz and Keaton, had no legal authority to sign the proposed articles of incorporation for certain owners of lands within the proposed district.

We must bear in mind *that not one scintilla of evidence was offered by the appellants,* or by any other objector. These objectors merely stood by and contented themselves with objecting to the form of proof offered by the petitioners for the district to show ownership of the lands therein.

Generalizing, we but state a well-settled truism when we say that since drainage and reclamation statutes are manifestations of one of the very highest phases of the police power, that, to-wit, having an intimate relation to the betterment of health through sanitation and the destruction of breeding-places for germ-bearing insects, courts in this, as in practically every other jurisdiction, have held that such statutes are to be liberally construed. [State ex rel. v. Bugg, 224 Mo. l. c. 554; State ex rel. v. Bates, 235 Mo. l. c. 293; Osborn v. Maxinkuckee Lake Ice Co., 154 Ind. 101.] Indeed, our statute in express terms declares its own remedial character, and requires at our hands a liberal construction. [Sec. 62, Laws 1913, p. 267.]

Coming specifically to the provisions of our statute, we note that there are provided time and place for both general and specific objections and exceptions. By section 4 of the Act of March 24, 1913, Laws 1913, p. 235, any person, barring those who are signers of the proposed articles of incorporation, may appear and file objections "why such drainage district should not be organized and incorporated." Such objections, it is obvious, inure to the benefit of all non-signing owners of property liable to taxation in the proposed district. After the district is, in a way of speaking, "conditionally organized and incorporated" (Carder v. Fabius River Drainage District, 262 Mo. l. c. 554), any individual owning such property therein (whether he signed the articles or not), or even the district itself, may file individual exceptions, covering apparently any and every possible phase of accruing damage to the property or interests of the exceptor. [Sec. 16, Laws 1913, p. 241.]

The general objection first above mentioned is that which is said to be in controversy here. Touching it our statute provides that "any owner of real estate or other property in said proposed district, who

may not have signed said articles of association, objecting to the organization and incorpo-
ration of said drainage district, shall, on or before the first day of the term of court at which the cause is to be heard, file his objection or objections why such drainage district should not be organized and incorporated. Such objection or objections shall be limited to a denial of the statements in the articles of association, and shall be heard by the court in a summary manner, without unnecessary delay." [Laws 1913, p. 235, sec. 4.]

*Proof of Ownership of Land.*

It will be noted that *objections may be filed on the day set for hearing* in the circuit court, and that when so filed they are to be heard *"in a summary manner,"* and *"without unnecessary delay."* It is not so clear that we are aided, for that in the determination of the troubling point, the Legislature may have had in mind a trial according to the rule governing summary proceedings, that is, a trial which is not regulated, or bound by the rules of the common law or by the statutes of pleading and procedure which govern practice and procedure in ordinary civil cases. For such proceedings yet follow the common-law rules of evidence, absent a statute otherwise providing. [Comm. v. Borden, 61 Pa. St. 272.] However, it is fairly deducible that the Legislature held in mind the utter impossibility in practice in the ordinary case of requiring ownership of lands in a proposed drainage district to be shown by a formal deraignment from the Government through original muniments of title, or by certified copies upon a proper foundation laid. In the case at bar more than thirty thousand acres of land are included in the proposed district. There are more than three hundred separate tracts described. These said tracts have as owners, or incumbrancers whose titles or claims are evidently evidenced by paper conveyances, many more than three hundred persons or

corporations. If there were but one conveyance to each tract much expense and labor would be involved in making strict proof to meet the contentions of appellants here. If there were an average of ten conveyances to each tract, the matter of proof of title in the way urged on us would instantly become impracticable to a point approaching the impossible. And if it were ever desired to be made a matter of review here by appeal, such appeal would likewise be impossible on account of the labor and expense of printing a record of the three thousand or more conveyances offered in evidence below. Being permitted by law to be no more ignorant than the ordinary citizen, of matters of contemporary progress, public moment and history, we know (in fact such acreage *is writ at large in the instant record*) that the Little River Drainage District contains much more than half a million acres of land. The strict rule here contended for would have forbidden for all time the organization of that district. Yet it seems that in the organization of that district the court *nisi* permitted, and this court sanctioned, the use of evidence which did not prove ownership (as deraignment by muniments of title from the source would have done, as inevitably as the demonstration of a problem in Euclid), but merely "evidence tending to prove the *ownership* as alleged in the articles of association." [Little River Drainage District v. Railroad, 236 Mo. l. c. 112.]

It is manifest that the circuit court could not pause in the organization of a drainage district under a statute worded as ours is, to try out and determine between all possible contenders each and every title to each of the three hundred parcels of land in the district at bar. Such a view is so restricted and narrow as to trench upon the ridiculous. So, while conceding that where the question of title is directly in issue the best evidence thereof is required as appellants contend, that is not the case before us. Here the matter of title

is only incidental, and all that is required is a prima-facie showing of ownership. The ownership shown, it would seem, may be that only which arises from a recorded deed, or a deed not recorded if there be in fact ownership, or no deed at all where there is sufficient possession. The *pseudo* owner may not have an indefeasible title; his title may be so flimsy as to fall at the first attack by the true owner, but if it be of record and be of the stature connoted by the phrase prima-facie, it is sufficient to constitute the claimant an owner so that he may petition for the incorporation of a drainage district. Being only incidentally involved therefore, title, or ownership, may be shown prima-facie by secondary evidence. [Railroad v. Gilbert, 3 C. C. A. 264; Joy v. State, 41 Tex. Crim. App. 46; Sleep v. Heymann, 57 Wis. 495; Babcock v. Beaver Creek Township, 65 Mich. 479; Grevenberg v. Borel, 25 La. Ann. 530.] The reason for the distinction is not far to see. For whenever an action is brought wherein the question of title to land is the sole issue to be determined the case and wherein the judgment will become final and conclusive proof of such title, the best evidence of which the conditions permit should be adduced. But where as here it is merely collateral, and the producing of the best evidence would involve so great a labor and so huge a volume of record evidence as to render the making of proof impossible from the view point of practicability, we are permitted to hold in consonance with the authorities that the rule as to the best evidence does not apply. Besides, the fact that any other view would render this statute so cumbersome and onerous in the making of proof of ownership, as to forbid the organization of any but small districts, when the converse must have been intended, inclines us to the opinion that the Legislature intended to relax the harsh rules of evidence in the making of this proof. That

such a view was in the legislative mind is to be gathered from the statutory requirement that such objections as those now at bar shall be heard in a "summary manner, without unnecessary delay."

We hold that the showing made by oral testimony of persons who are shown to be competent abstractors, familiar with land titles, and who had examined the abstracts of title to the lands in the proposed district, and the records of the recorder's office touching same, as also the tax books, was sufficient, as prima-facie proof of such ownership for the purposes of incorporating this drainage district.

We could have reached this conclusion by another road: For while both the appellants and the respondents treat this point of ownership as well raised by the objections filed, we do not think that it is so raised. But because both sides so agree, and because it has, it seems, been raised before and never ruled (Little River Drainage District v. Railroad, supra; Birmingham Dr. Dist. v. Railroad, 266 Mo. 60), we have thought best to notice it. Yet one will read in vain through the exceptions to find *specifically* this objection mooted. It is objected, to-wit:

"13th. For the reason that the owners of a majority of the acreage of the swamp, wet and overflowed lands and lands subject to overflow by water in a contiguous body have not signed the said articles of association," and,

"24th. For the reason that many of the persons whose names appear as signers to said articles of association do not own any lands or other property within said Mingo Drainage District."

But nowhere is it said specifically who of the signers do not own lands in the proposed district, or that the ostensible owners of a majority of the acreage who signed the petition do not in fact own the lands they therein claim to own. Rather do the two allegations seem to hint, while most adroitly avoiding, a di-

rect charge of a signing by others than the owners of the lands. Taking the two charges together they may seem to make this direct charge; considering them separately they do not so charge. The thirteenth allegation may mean that, granting good faith and truth in the averment of ownership, there are yet, upon a bare inspection and mathematical addition, not enough owners of acreage signing to amount to a majority. The twenty-fourth allegation may mean that there are enough signers to confer jurisdiction, but yet by accident or inadvertence, names of unnecessary persons have gotten upon the lists.

Conceding that it might be possible for a fraud to be perpetrated upon the court to which a petition for the incorporation of a drainage district is presented, and that in such case there should be at hand a plain way to circumvent such fraud, yet it is apparent that such protection both to the court and to non-signing and opposing owners of property liable to taxation, is plainly afforded without raising for such chimerical situation an insuperable barrier to the organization of these districts at all. For if A, who is not an owner of any land of the mentioned sort in the proposed district yet signs the petition for some fraudulent and ulterior motive, nothing is easier than to so charge specifically in the objections filed, by denying that A is such owner, and upon the hearing to break down the prima-facie case made by proof of A's lack of competency as a signer. Or, even to deny generally that divers persons who signed the petition were competent signers or owners of the lands they claim to own, and therefore that their signing was designed to work a fraud upon the court and impose an illegal tax and hardship upon the property owners. But as forecast, in such case some proof of the allegation ought to be made to destroy the prima-facie case made by proof from persons who had examined the records, abstracts and tax books. We mention this lest it be

urged that no protection against fraud is afforded by the ruling we have found it necessary to make in compliance with the statutory demand of a liberal construction of this law at our hands.

II. It is contended that there are some high, hilly lands embraced in the proposed district; and that such fact renders the incorporation illegal. We do not think it necessarily follows that because certain high lands which neither floods nor water cover, are included, such fact conclusively shows a lack of benefit to such lands making the inclusion of them *ipso facto* error. This would seem to be true here for at least three reasons: (a) Appellants here do not own any of these hill lands so here included; (b) it is not shown that the petitioners who signed would cease to be a majority, if the signing owners of the hill lands were excluded, and (c) it may well be that the drainage of low, wet and swamp land lying about, around or near high hill land will so far benefit the latter in matters of sanitation and ease of egress and ingress as to render it entirely equitable that the hill land should bear a modicum of the cost of draining the low land. Besides, it was said in oral argument and not denied, that such inclusion of hill land does not change the status of the case as to the forum, or jurisdiction, or as to the requisite number of signing owners, and that such inclusion was largely for the purpose of convenience in description. Moreover, it appears by the record that the petitioners sought to amend the proposed articles by striking out these hill lands, but their motion to this end was overruled. If this was error, it was not one for which petitioners should suffer. [In re Big Lake Drainage District v. Rolwing, 265 Mo. 450.]

The owners of this hill land, if so it be that they are not benefited, have provided for them in the statute under discussion a place and time to moot this question. [Sec. 16, Laws 1913, p. 241.] That such a question might be raised successfully at this juncture,

we may concede without deciding, contenting us with holding that it has not been so raised upon the facts here. In such latter case, however, the inclusion of the hill land should have the effect to oust jurisdiction by destroying the competency of a jurisdictional number of petitioners; absent, perhaps, even in such case, proof of contingent benefit from betterment of health or access.

III. The proof shows that one Shantz, who was president of a corporation owning certain of the lands sought to be included, signed the articles of incorporation without being in that behalf specifically authorized by the board of directors or by a vote of the stockholders. Likewise the proof showed that one Collins, having a power of attorney to act generally for the Connecticut Mutual Life Insurance Company touching certain lands which said company owned in the proposed district, signed for said company without specific authorization. It is urged that these persons were not upon these facts competent to sign for their respective principals.

We held in the case of Sibbett v. Steele, 240 Mo. l. c. 94, in substance that a petition for the incorporation of a drainage district was in effect the first pleading in the case; that such pleading might be signed by the attorneys who appeared in court and therein represented the petitioners, and that so assuming to represent them, such attorney would be held to possess the power of binding the petitioners by the judgment rendered, no objection from the latter appearing showing lack of power so to bind them. These petitioners are not here objecting for themselves. They do not question the authority of their agents. Appellants are seeking to question it for them. We think the holding in the Sibbett case disposes of this contention, either directly or by the very strongest analogy. Also that case disposes of the contention that Keaton had

no authority to sign for Sloan and Mrs. Clayton; the facts being that Keaton had contracted to buy the land for which he signed the names of Sloan and Mrs. Clayton, and the conveyance to him therefor was actually executed and lying in escrow. Before the case came on for hearing Keaton had taken down the deed and had it recorded. Neither Keaton, the present owner, nor the Shantz Company, nor the Insurance Company was objecting; the others may not. We disallow these several contentions.

No point is made touching the style of this case. Consequently, we style it here cumbersomely, as it came up to us. We think, however that prior to a final judgment decreeing incorporation, the better style would be: "In re.Petition for Incorporation of Mingo Drainage District; George S. Dean et al., Petitioners, Respondents, v. B. F. Wilson et al., Appellants." [Little River Drainage District v. Railroad, 236 Mo. 94.] After the decree of incorporation has been made final, the district may of course sue and be sued in its own corporate name. [Carder v. Fabius River Drainage District No. 3, 262 Mo. 542.] We but mention this in passing, lest by silence, we should seem to approve the style herein adopted, and for the sake of uniformity, of which virtue there has been so little, as a glance at the Missouri drainage cases indicates.

· It follows that the judgment incorporating this district should be affirmed. Let this be done. All concur, except *Walker*, *J.*, absent.