The Garden of Eden Drainage District v. Bartlett Trust Company et al., Appellants.—50 S. W. (2d) 627.

Division One, May 27, 1932.

*Culver, Phillip & Voorhees* for appellants.

*Sasse & Merrill* and *S. J. & G. C. Jones* for respondent.

STURGIS, C.—This is a suit based on certain tax bills issued by the plaintiff, an incorporated drainage district of Chariton County, Missouri, against certain lands within said drainage district owned by the defendants. The first count of the petition covers the drainage taxes for the year 1926, and the second count for the year 1927. The suit was commenced in August, 1928, in the Circuit Court of Chariton County, against the Bartlett Trust Company, an incorporated bank, but after a change of venue to Carroll County, where the case was tried, defendant bank having failed and gone into the hands of the State Bank Commissioner, S. L. Cantley, he and his deputy in charge were, by an amended petition with appropriate allegations, made parties defendant and joined in the demurrer and answer.

The plaintiff drainage district was organized and incorporated in about 1917 under the Act of 1913, Laws of Missouri, 1913, pages 232-267, relating to organizing drainage districts by circuit courts (now Art. 1, Chap. 64, R. S. 1929, Secs. 10743, et seq.) This drainage district had been functioning since that time, had accomplished the work of reclamation in large measure, had issued bonds for that purpose under the provisions of that act, and the taxes here in suit were levied for the purpose of maintenance of the drainage system and for paying the interest and installment of bonds falling due in the years 1926 and 1927.

The petition is in usual and proper form and it is conceded that it states facts necessary to constitute a cause of action under the statutes mentioned. The defendant demurred to the petition on the grounds (1) that the statute mentioned under which the plaintiff district was organized and incorporated is violative of Section 1 of Article XIV (the due process of law clause) of the amendments to the Constitution of the United States, and plaintiff has no right to function as a corporation and levy and collect taxes; (2) that this suit to collect taxes and enforce the lien of the State against the defendant's lands cannot be maintained while the property of the defendant bank is in the hands of the Commissioner of Finance for liquidation.

The demurrer was overruled and the defendants then filed a motion to abate or dismiss the suit on the second ground stated in the demurrer, which was also overruled.

The defendants then filed their answer raising these same issues more in detail and stating the facts more fully than disclosed by the petition.

The trial resulted in a judgment for plaintiff in the amounts prayed for and made same severally in a lien against the various tracts of land as described. No point is made as to the form or amount of the judgment. The defendants have duly appealed.

At the trial the tax bills sued on were put in evidence without objection, making a prima-facie case for plaintiff, and then certain pertinent facts were agreed upon, including, to-wit, "that all the steps required by the statutes, and only the steps required by the statutes, to be taken to organize and incorporate a drainage district under the act relating to drainage districts incorporated by circuit courts were taken by the petitioners in this case in the organization of The Garden of Eden Drainage District;" and that if said statutes were valid, "then the drainage district is a valid corporation, the tax sued for is a valid tax, and if the law under which the plaintiff claims to be incorporated is invalid, then there is no drainage district and there is no tax." The defendants also admitted that "the taxes were legally levied and that the amount of the tax levied is as stated in the petition, if the district is legally incorporated;" and that "all proper certificates and returns of officers of the tax being delinquent were made as required by law; and that proper tax bills have been issued and certified to by the proper collector of revenue of Chariton County, Missouri." It was further admitted that at the time the decree incorporating the district was entered, Henry Evernham was the owner of the lands mentioned in the petition; that he executed a deed of trust on the property to secure a loan of $10,000; that default was made in the payment of the debt and the mortgage was properly foreclosed, and defendant Bartlett Trust Company became the owner of the land at the sale and is the owner of the land; that neither Evernham nor the trustee in the deed of trust, nor the Bartlett Trust Company, ever signed the articles of incorporation or filed any objection thereto.

The all-important question presented and urged by appellants in this case is that the statutes of this State known as the Circuit Court Drainage District Act of 1913 (now Art. 1 of Chap. 64, R. S. 1929) relating to drains and levees and providing for the "organization of drainage districts by circuit courts" is violative of Section 1, Article XIV, of the Amendments to the Federal Constitution providing that: "Nor shall any state deprive any person of life, liberty, or property without due process of law;" that as the plaintiff is a creature of the statutes in question and does not exist and cannot function except as such laws give it life, then if such laws are void because violative of the paramount law of the land, plaintiff never had any life or legal existence and cannot levy and collect taxes.

As preliminary to this constitutional question, we may grant without any extended discussion the first proposition advanced by ap-

pellants, that if the statutes under which plaintiff is incorporated and claims a legal existence are unconstitutional and void, then its corporate existence and power to maintain this or any other action may be called in question and challenged in this collateral proceeding brought by it to enforce payment of taxes levied by it. Plaintiff cannot act as a *de facto* corporation unless there is a foundation on which it could, if properly done, be erected. There must be ''a charter or general law under which such a corporation as it purports to be lawfully organized.'' [Tulare Irrigation District v. Shepard, 185 U. S. 1; 46 L. Ed. 773; Park Co. v. Gibson, 268 Mo. 394, 406, 188 S. W. 179; 14 C. J. 213, et seq.] And an unconstitutional law is no law and confers no rights. [Norton v. Shelby County, 118 U. S. 425, 30 L. Ed. 178; State ex rel. v. Hughes, 294 Mo. 1, 18, 240 S. W. 802.]

██ ██ We also agree that no law can authorize the taking of one's property by taxation or otherwise without affording such person the right and an opportunity to be heard at some time and place in opposition, and no law is constitutional when tested by ''due process of law'' unless such right be awarded. We do not mean by this that a citizen has a right to be heard against the power of the State or its governmental agencies to levy and collect taxes for public purposes, as that is an attribute of sovereignty lodged in the legislative department, but that he has a right to be heard as to whether the purpose is public and as to the lawfulness and proper apportionment of the tax against his property. Can the statutes in question stand this test?

It is provided by the first section of this act, Section 10743, Revised Statutes 1929: ''The owners of a majority of the acreage in any contiguous body of swamp, wet or overflowed lands, or lands subject to overflow, situate in one or more counties in this State, may form a drainage district for the purpose of having such lands and other property reclaimed and protected from the effects of water, for sanitary or agricultural purposes, or when the same may be conducive to the public health, convenience or welfare, or of public utility or benefit, by drainage or otherwise, and for that purpose may make and sign articles of association in which shall be stated: The name of the district, and the number of years the same is to continue; the boundary lines of the proposed drainage district; the names of the owners of lands or other property in said district, together with a description of the lands and other property owned by each; when the name of the owner of any of said lands or other property is unknown, this fact shall be set out in said articles; said articles shall further state that the owners of real estate and other property within said district whose names are subscribed to said articles are willing to and do obligate themselves'' to pay the taxes necessary to carry out the purpose of the organization; ''and said articles of association shall contain a prayer, praying that the lands

and other property described therein be declared a drainage district under the provisions of this article.''

The statute then provides that such articles of association shall be filed in the circuit court and same becomes the petition or first pleading in the case. [Sibbett v. Steele, 240 Mo. 85, 94, 144 S. W. 439; In re Mingo Drainage District, 267 Mo. 268, 285, 183 S. W. 611.] The signers of the articles of association occupy the position of plaintiffs and those not signing but notified occupy the position of defendants. Notice by publication to all persons interested is provided for.

 The claim here made of a want of due process of law is based on the next Section 10745, Revised Statutes 1929, which provides: ''Any owner of real estate or other property in said proposed district, who may not have signed said articles of association, objecting to the organization and incorporation of said drainage district, shall, on or before the first day of the term of court at which the cause is to be heard, file his objection or objections why such drainage district should not be organized and incorporated. *Such objection or objections shall be limited to a denial of the statements in the articles of association,* and shall be heard by the court in a summary manner, without unnecessary delay, and in case all such objections are overruled, the circuit court shall by its order, duly entered of record, duly declare and decree said drainage district a public corporation of this State, for a term not exceeding the time mentioned in said articles of association signed and filed. If the court finds that the property set out in said articles of association should not be incorporated into a drainage district, it shall dismiss said proceedings, etc.''

Defendants' claim is that while all land and property owners are notified by publication of the time and place of hearing, and any property owner, who has not already petitioned for the drainage district and agreed to pay all necessary taxes, may appear at the hearing in the circuit court on the question of forming the drainage district and file his objections ''why the drainage district should not be organized and incorporated,'' yet his objections are ''limited to a denial of the statements in the articles of association.'' This, it is claimed, so narrows and limits a property owner's right to object as to amount to a practical denial of any hearing. The only objections, it is claimed, which the court will hear consist of a denial of (1) the name of the district, and how long it will run; (2) the boundary lines of the proposed district; (3) the names of the owners of the land in the district and the description of that owned by each; (4) that the names of owners of certain lands are unknown; and (5) that those signing are willing and obligated to pay the taxes assessed against their respective lands. And it is insisted that the objecting landowners are thereby precluded from showing such vital

facts as that (1) the lands within the boundaries of the proposed district are not a contiguous body of swamp, wet or overflowed lands, or lands subject to overflow; (2) that the signers of the articles are not the owners of a majority of the acreage of the lands embraced within the boundaries of the proposed district; (3) that the lands of the objector are not lands of the character above mentioned; (4) that the district is not formed for the purpose of having the lands reclaimed and protected from the effects of water, for sanitary or agricultural purposes; and (5) that the drainage of the same is not necessary to the public health, convenience or welfare, or a public utility or benefit, and that the corporation is not for a public purpose. These, it is said, are not among the things which are necessary to be stated in the articles of association.

It seems to us that this places a too narrow construction on the statutes above mentioned. It is true that Section 10743, Revised Statutes 1929, provides that the petition or articles of association of the proposed drainage district shall contain a statement of the five matters first above enumerated; but said statutes do not say that such articles shall not contain other matters vital to the formation of the drainage district, or that a statement therein of such other facts is not necessary to constitute a good petition or articles of association. In fact, said section plainly implies that the articles of association to be presented to the circuit court, and which constitutes the first pleading in the case, shall state all the facts which the statute makes essential in order to form a drainage district; and to this end the statute provides, to-wit, (1) that the lands within the boundaries of the proposed district are a contiguous body of swamp, wet or overflowed lands, or lands subject to overflow; (2) that the signers of the articles are the owners of a majority of the acreage of the lands embraced within the boundaries of the proposed district; (3) that the lands of the district are lands of the character above mentioned; (4) that the district is formed for the purpose of having the lands reclaimed and protected from the effects of water, for sanitary or agricultural purposes; and (5) that the drainage of the same is necessary to the public health, convenience or welfare, or a public utility or benefit, and that the corporation is for a public purpose. Some of these matters might be taken as implied by law without a specific averment.

Now it will be seen that Section 10745, supra, giving a property owner, who has not signed the articles of association, the right to appear and contest the matter on objections "why such drainage district shall not be organized and incorporated," only limits such objections to a denial of the statements in the articles of association, which, as we have seen, covers all the vital facts made essential to the formation of a drainage district. In other words, the articles of

association which constitute the first pleading must set forth, though informally, the basic facts necessary to a cause of action for forming a drainage district, and a failure in this respect would itself constitute a ground of objection. To this end the statute provides that the articles of association, which constitutes the first pleading, "may be amended as any other pleading," and that the objections shall be heard in a "summary manner."

Defendants concede that the statutes in question were valid and constitutional prior to the amendment of 1913 as against the same attack as made here, and that this court so held in Houck v. Little River Drainage District, 248 Mo. 373, 154 S. W. 739, affirmed by the Supreme Court of the United States in Houck v. Little River Drainage District, 239 U. S. 254, 60 L. Ed. 266. But it is claimed that the act in question was so vitally changed by the amendment of 1913 as to make that decision inapplicable. The change made by the amendment of 1913 which is claimed to have this effect is in Section 10745, supra, providing for the filing and hearing in the circuit court of objections "why such drainage district should not be organized and incorporated," and consists of these words: "Such objection or objections shall be limited to a denial of the statements in the articles of association." These words take the place of the words "or why his land, or any part thereof, will not be benefited by the proposed drainage district, and embraced in and made liable to taxation for drainage purposes," which were stricken out. It will thus be seen that while the objecting landowner may yet present objections why the drainage district should not be organized and incorporated, the amendment omits the right of the landowner to object that "his land, or any part thereof, will not be benefited by the proposed drainage district, and (should not be) embraced in and made liable to taxation for draining the same." This amendment, therefore, when these two sections are read and construed together, does not take from an objecting landowner the right to make any valid objection to the district being organized and incorporated; but at most only that *his land* is not benefited and should not be included or taxed. Whether or not the objecting landowner is afforded an opportunity to be heard on this question at a later stage of the proceeding will be considered later.

We might here say, however, that the question of whether a particular tract of land is benefited by a system of drainage does not altogether depend on whether the particular land is itself swamp land or subject to overflow. What is termed hill land, when contiguous to or surrounded by swamp land, may be greatly benefited by draining such disease producing swamps, or the means of ingress and egress to and from such lands be thereby improved and benefits be conferred by facilitating or rendering possible other highly ben-

eficial public improvements. [In re Mingo Drainage District, 267 Mo. 268, 284, 183 S. W. 611; Little River Drainage District v. Railroad, 236 Mo. 94, 112, 139 S. W. 330.]

It is also true that since the amendment of 1913 the drainage act as it now exists has been held constitutional as against the identical objections now urged. [Bartlett Trust Co. v. Elliott, 30 Fed. (2d) 700.] The court held in that case that in determining its constitutionality the whole act must be considered and not merely one or two sections; that such is an exercise of the police power of the State, and then added: Notice is given, "with the opportunity afforded for parties interested to file objections denying the allegation of the petition. The manner of pleading the issues to be determined by the court is decidedly informal. . . . All the facts which the Legislature deems to be essential in order to organize a district may be denied, and proof offered in support of such defenses. A hearing at which an interested party has the opportunity to allege and prove the non-existence of each and every fact, the existence of which shall be necessary to establish a district, amply meets every possible constitutional requirement. The issue there is whether or not a drainage corporation shall be formed, and it is inconceivable that in such a proceeding any property owner would be denied the privilege of asserting any pertinent objection to the formation of a corporation for the purpose of carrying on a public work such as that contemplated by this statute. . . . [In re Mingo Drainage District, 267 Mo. 268.]" It is also true here, as it was there, that it is not claimed in this case that this defendant or any predecessor in title ever sought to present any objection to the incorporation of The Garden of Eden Drainage District and was denied the privilege of stating or proving a defense.

As the above case noted, this court upheld the constitutionality of this act in In re Mingo Drainage District, supra, although it is claimed that the specific objection to the constitutionality of the act now urged was not there considered. A reading of that case, however, discloses that Judge FARRIS, who wrote the opinion, was thoroughly familiar with this drainage act and had before him the objectionable clause limiting a landowner's objections to a mere denial of the statements required to be made in the articles of association presented to the circuit court for hearing, and the court construed the act to permit objections to be raised and considered and did there consider objections such as that "there are unlawfully included within the limits of the proposed district certain lands which are not swamp but high and hilly," and that the articles of association were not legally signed, etc.

In Little River Drainage District v. Railroad, 236 Mo. 94, 108, 139 S. W. 330, the court said: "If no objections were made by the

landowners, it would still be incumbent upon the petitioners to satisfy the court as to the practicability of the proposed improvement,'' etc., and this is true as to the lands proposed to be drained being swamp land or land subject to overflow.

We do not, therefore, uphold defendants' contention that the statutes in question limit the power and duty of the circuit court, which is made the governmental agency in forming this public corporation in question, to inquire into and ascertain the facts necessarily precedent to its incorporation; and as held in Bartlett Trust Co. v. Elliott, supra, the statute requires notice ''with the opportunity afforded for parties interested to file objections denying the allegation of the petition.''

Another view of this matter is equally fatal to defendants' contentions. The statutory provisions we have discussed are the ones providing for the tentative formation and incorporation of the drainage district which, when finally formed, is clothed with the power of taxation. After the decree is entered creating the corporate entity, the same must be organized by selecting supervisors and officers and causing to be made surveys and engineering work, and a plan for reclamation must be adopted. The power of levying taxes is vested in the board of supervisors after the corporate district is organized. This board is authorized by Section 10752, Revised Statutes 1929, to at once levy a uniform tax of not exceeding fifty cents per acre on the lands of the district for the purpose of paying the preliminary costs of forming same, making the surveys, etc., leading up to the adoption of the plan for reclamation, the assessment of benefits and damages and other expenses up to the time the board is empowered to provide the funds ''to pay the total cost of works and improvements.'' These taxes, other than the tax of not exceeding fifty cents per acre for preliminary costs, are to be assessed, through a board of commissioners appointed by the circuit court and reporting to it, on the basis of benefits and damages. A hearing is then had by the court, after due notice, on the report of the commissioners, at which any interested party may file objections thereto and be heard thereon; that is, ''he may file exceptions to said report or to any assessment for either benefits or damages.'' Certainly the act in question affords the landowner at this stage of the proceedings an opportunity to be heard as to what, if any, benefits (less damages, if any) are to be assessed against his land, and on this basis the taxes to pay the costs of the works and improvements, together with maintenance taxes, are assessed and levied. The taxes now in question are for this purpose and have been so levied. Presumably, the taxes of fifty cents per acre for preliminary costs against these lands have long since been paid, or at least are not here in controversy.

It is held generally that if the landowner is afforded the opportunity and right to be heard at any stage of the proceedings before the tax is levied, that is a sufficient compliance with the due process of law clause of the Constitution. It is the final judgment of the circuit court on the hearing of the report of the commissioners to assess benefits and damages, and the landowners' exceptions thereto, that affects defendants' rights and resulted in the levy of the taxes here in question. [Hodge v. Muscatine County, 196 U. S. 276, 49 L. Ed. 477; Bartlett Trust Co. v. Elliott, 30 Fed. (2d) 700, 704, and cases cited.]

■ As we have noted, defendants' objections to the constitutionality of the present drainage act goes only to the provisions relating to the formation and incorporation of the drainage district. Yet it is the settled law that the mere formation and incorporation of a drainage district, with power to tax for certain purposes, and the inclusion of defendant's land therein, does not of itself and without more deprive such landowner of his property, much less does so without due process of law. The formation of such corporation merely creates a legal entity with power to tax. It is the exercise of this power which constitutes the taking of property and violates the due process of law clause, if at all. "The bare creation of a drainage district is, after all, simply the creation of a district within which certain taxes may be levied, by certain designated agencies and for certain specific purposes. To this extent a drainage district is on a parity with any other taxing district. . . . The mere fact that the lands of the relators in this case have been incorporated into the Albany Drainage District does not, *ipso facto*, in any manner affect relators' rights in the premises, so long as their property has neither been benefited nor damaged." [State ex rel. Manion v. Dawson, 284 Mo. 490, 507, 508, 225 S. W. 97.] Whether it is or not is to be determined in the later proceedings.

And as said in Little River Drainage District v. Railroad, 236 Mo. 94, 107, 139 S. W. 330, "It is apparent that there is a radical difference in the character of the inquiry under the first ground of objection, namely, why the district should not be incorporated, and the second ground, why the objector's land or any part thereof will not be benefited by the proposed drainage, and should not be embraced in the district. . . . The law does provide for full and complete information and notice of the 'plan for drainage' before the assessment of benefits, and gives to every landowner the right to be heard and to a trial in court before a charge can be placed against his land, and when accorded such right it cannot be maintained that he is denied his day in court."

And so this court held in In re Drainage District; Buschling v. Ackley, 270 Mo. 157, 174, 192 S. W. 727, that the reason why no

appeal would lie from the judgment of the circuit court organizing and incorporating a drainage district is that it does not adjudicate any one's rights. ''The incorporation of the district simply organizes an entity with which to further proceed to effect reclamation to be hereafter accomplished.'' It is ''preliminary, informal, tentative, and conditional.''

It is held in In re Mingo Drainage District, 267 Mo. 268, 278, 183 S. W. 611, that after the district is incorporated, ''any individual owning such property therein (whether he signed the articles or not), or even the district itself, may file individual exceptions, covering apparently any and every possible phase of accruing damage to the property or interests of the exceptor.''

█ It is also held that the formation of a corporation with power to tax does not contemplate a hearing and requires no notice to anyone, though his property is liable to be taxed thereby. [Little River Drainage District v. Railroad, 236 Mo. 94, 109, 139 S. W. 330.]

As to the taxes here in question levied after its incorporation to pay bonds issued by the district in payment of the reclamation work and for maintaining the drainage system, the landowner was afforded an opportunity to be heard on any objections he chose to make, and such taxes are not subject to the constitutional objection raised, even if we should hold that the authority given such district to levy at once and without more a tax of fifty cents per acre on all land in the district to pay preliminary costs be invalid as violative of the due process clause of the Federal Constitution. The tax is not so vital to the continued existence and functioning of the district that its invalidity destroys the district itself. The Garden of Eden is too ancient an institution to perish in this manner.

█ The point is also made that while the creation of a taxing corporation with certain boundaries is legislative, and the Legislature itself may fix the boundaries of the district without notice or hearing, yet if the Legislature delegates this power to some court or board to create the taxing district out of lands to be benefited in a certain way, as by drainage, and delegates to such subordinate body the power to fix the boundaries by including therein only such lands as are so benefited, and when the district is so formed, all the land included in the district shall *ipso facto* be taxed, then such subordinate body must afford a hearing to the owners of land to be included therein as to whether such lands would be so benefited; otherwise, such taxation is taking property without due process. This proposition finds support in Fallbrook Irrigation District v. Bradley, 164 U. S. 112, 41 L. Ed. 369. Such, however, is not the construction placed on the statutes in question by this court. Lands are not to be taxed merely because included in the district. Whether the lands will be benefited and taxed or not depends on the finding as to being in fact

benefited. The damages may exceed the benefits or there may be no benefits found. This is to be determined on a hearing. [In re Drainage District; Buschling v. Ackley, 270 Mo. 157, 164, 192 S. W. 727.] The defendants argue along this line that under the statutes in question, hill lands not swamp or subject to overflow cannot be placed in the drainage district even if benefited thereby. While the primary purpose of forming a drainage district is to drain swamp and overflow land for agricultural purposes, yet the statute includes "sanitary purposes" and takes into consideration "public health, convenience and welfare," and may well include lands thus benefited. [Little River Drainage District v. Railroad, 236 Mo. 94, 112, 139 S. W. 330; In re Mingo Drainage District, 267 Mo. 268, 284, 183 S. W. 611.] This question, however, only remotely, if at all, affects the constitutionality of the drainage act in question. We, therefore, again confirm the constitutionality of this drainage act.

The only other question in the case is raised by defendants' motion to abate and dismiss this action on account of the defendant having been placed in the hands of the Commissioner of Finance for liquidation. The defendants invoke the provisions of Section 5316, Revised Statutes 1929, which provides that the notice required to be posted "shall be sufficient to place all its assets and property, of whatever nature, in the possession of the commissioner, and shall operate as a bar to any proceedings whatever whether in law or in equity, against any incorporated bank, private bank, or trust company, or its or their assets, and if any such action is begun, then all such proceedings shall be summarily dismissed and for naught held, upon the certificate of the commissioner being filed in such cause, showing that he has taken possession of the assets of such bank, banker, or trust company, and any court in which such proceedings are pending shall have no power, authority, or jurisdiction to proceed further in any such cause."

The present suit was commenced on August 15, 1928, in Chariton County, while the motion to abate or dismiss was not filed till October, 1929, after change of venue to Carroll County. The Finance Commissioner did not at any time file in this cause the certificate required by the statute in case he desired to have the suit abated or dismissed. In fact, the Commissioner of Finance paid no attention to the case until the plaintiff, on suggestion that the Commissioner of Finance was an interested party, amended the petition making him a party defendant. Apparently the Commissioner gave the matter no attention further than to allow the attorney for the bank to represent him along with the bank.

It has been held by this court that the statutory provision requiring a suit against an insolvent bank to be dismissed or abated "is for the benefit of the commissioner to prevent inconvenience and

embarrassment to him in the orderly administration and settlement of the affairs of insolvent banks and we are unable to see any good reason why he may not waive the benefits of the provision as he undertook to do. We think the provision for dismissal is directory and not mandatory.'' [Bartlett v. McCallister, 316 Mo. 129, 137, 289 S. W. 814.]

The motion to abate was presented to the court on the mere showing that the bank had failed and the Commissioner was in charge of its property. He had been then so in charge for nearly three years. He was not asking for further time in which to dispose of the property subject to the lien of the taxes. He was not offering to pay the taxes out of the funds of the insolvent bank if given time, if indeed he would be allowed to do so. We need not decide whether or not the trial court in this kind of a case should, on application of the Commissioner of Finance, continue the case or stay proceedings till such time as will afford the Commissioner in charge of the bank's assets time and opportunity to ascertain the amount of assets and liabilities and arrange a sale of the property for the best advantage of the creditors. That was not what was asked.

These taxes merely constituted a lien on the land. They did not constitute a personal indebtedness against the defendant bank and a suit thereon could not result in a personal judgment. Suits for taxes of this character are in the nature of proceedings *in rem,* though against the owner of the land. The judgment is against the land and not against the owner. We are constrained, therefore, to hold that these taxes are not ''such claims against the corporation or banker'' as fall under the provisions of Section 5333, et seq., Revised Statutes 1929, and are thereby required to be presented to the Commissioner for allowance within the limited time there specified. They are not claims which the Commissioner can allow or reject, and which, if allowed or established by suit if rejected, are claims or liabilities against the insolvent bank to be paid, *pro rata* if need be, out of its assets. [Sec. 5339, R. S. 1929.] Such taxes cannot properly be allowed and paid as preferred claims as that also would require payment to be made out of the general assets of the insolvent. Such taxes are by force of law liens against the land and payment cannot be enforced in any other way than by foreclosure of the lien. Certainly the lien of the State against these lands cannot be enforced through filing same as a claim with the Commissioner and cannot be lost or destroyed by mere failure to do so. The last day for filing claims with the Commissioner was June 6, 1927, and it is doubtful whether the drainage taxes for 1927 were then levied or in condition to be filed as a claim. We rule this point also against the defendants.

The judgment of the trial court is affirmed. *Ferguson* and *Hyde,* *CC.,* concur.

PER CURIAM:—The foregoing opinion by STURGIS, C., is adopted as the opinion of the court. All of the judges concur.